[Filed March 19, 1888.]

## F. P. HEMBREE ET AL., RESPONDENTS, *v.* BLACKBURN AND PECKHAM, AND I. R. DAWSON, APPELLANTS.

CHATTEL MORTGAGE DEFINED. — A chattel mortgage is the conditional sale of a chattel, to be void upon the performance of the condition named therein.

PARTNER — POWER TO MORTGAGE CHATTELS OF THE FIRM TO SECURE PARTNERSHIP· DEBTS. — One member of a firm has the authority to mortgage the chattels of the partnership to secure the payment of partnership debts, without the knowledge or consent of the other members of such firm.

APPEAL from Yamhill County.

*Cox, Smith & Teal,* for Appellants.

*McCain & Hurley,* for Respondents.

STRAHAN, J. — Blackburn and Peckham were partners in the business of merchandising at Carlton, in Yamhill County, Oregon. In the course of their business they became indebted to a number of merchants in Portland in the aggregate amount of about $7,941.22, to secure which sum of money to I. R. Dawson, to whom such claims had been assigned, A. Blackburn, as one member of said firm, and in behalf of the firm, executed to said Dawson a note, and also a mortgage to secure the same on all of the firm's property. Said firm was also indebted to the plaintiffs and others, who caused the firm's property to be attached after the making of said chattel mortgage, and after Dawson had entered into the possession of said property under the mortgage, and they then brought this suit to set aside and cancel said mortgage as fraudulent. The plaintiffs obtained a decree in the court below, setting aside said mortgage, from which the appellant Dawson has brought this appeal. The cause was referred in the court below and the evidence taken in

writing, so that the entire case is here both on the law and facts.

1. The main contention of the plaintiffs is that the writing which is sought to be set aside by this suit is an assignment for the benefit of creditors, and that one partner without the consent of the other has no power to make such an assignment. Said writing is as follows:—

### "EXHIBIT 'A.'

"This indenture, made the sixth day of November, in the year of our Lord one thousand eight hundred and eighty-six, between A. Blackburn and E. L. Peckham, partners as Blackburn and Peckham, of Carlton, county of Yamhill, State of Oregon, the parties of the first part, and I. R. Dawson, of Portland, county of Multnomah, State of Oregon, the party of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of seven thousand nine hundred and forty-one and twenty-two one hundredths dollars gold coin of the United States, to us in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, assigned, transferred, and set over, and by these presents do grant, bargain, sell, assign, transfer, and set over unto the said party of the second part, all those certain goods and chattels now being in the town of Carlton, county of Yamhill, Oregon, and in Yamhill County, State of Oregon, and described as follows, to wit: All our stock of goods, wares, and merchandise now in our store-house and warehouse in said town of Carlton. All our horses, wagons, and other personal property heretofore mortgaged to Murphy, Grant & Co., by mortgage dated November 1, 1886, and filed in the office of the clerk of the said county on that date, together with all personal property of every kind and nature belonging to said firm of Blackburn and Peckham. To have and to hold all and singular the said goods and chattels above bargained and sold, or intended so to be, unto the said party of the second part, his executors, administrators, and assigns forever. *Provided,* nevertheless, and these presents are upon this express condition, that if the said parties

of the first part, their executors, administrators, or assigns shall well and truly pay unto the party of the second part, his executors, administrators, or assigns, the sum of seven thousand nine hundred and forty-one and twenty-two one hundredths dollars, and interest thereon at the rate of ten per cent per annum, in accordance with the terms of a certain promissory note, of which the following is substantially a copy:—

"'$7,941.22.

"'PORTLAND, OREGON, 6th November, 1886.

"'On demand after date, without grace, I promise to pay to the order of Ivan R. Dawson, at his office in Portland, Oregon, seven thousand nine hundred and forty-one and twenty-two one hundredths dollars, for value received, with interest after date at the rate of ten per cent per annum until paid, principal and interest payable in United States gold coin, and in case suit is instituted to collect this note, or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorneys' fees in said suit.

(Signed,)   "'BLACKBURN AND PECKHAM.<br>"'A. BLACKBURN.'

"Then these presents shall be void.

"The party of the second part shall take immediate possession of said property, and possession is hereby delivered to him, and he shall sell and dispose of the property herein named, at private sale, at such price and in such manner as he shall deem best, and after deducting the costs and expenses of such sale, shall apply the proceeds of the same to the payment of the aforesaid note, and if there shall be any balance remaining after the payment of said note, shall pay over the same to said Blackburn and Peckham.

"In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

(Signed,)   "BLACKBURN AND PECKHAM.<br>"A. BLACKBURN.

"Signed, sealed, and delivered, in presence of MILTON W. SMITH."

"EXHIBIT 'B.'

"For value received we hereby assign, sell, set over, and transfer all our books, accounts, notes, and other demands to I. R. Dawson.

"Witness our hands this 6th November, 1886.

(Signed,)            "BLACKBURN AND PECKHAM.

"A. BLACKBURN.

'Witness: MILTON W. SMITH."

This writing on its face contains every requisite necessary. to constitute a chattel mortgage. It is to secure the payment of money, and it is made directly to the creditor. It purports to be a conditional sale of the property as security for the payment of a debt. The condition is that the conveyance is to be void upon the performance of the condition named, which in this instance is the payment of the money. (Jones on Chattel Mortgages, § 1; Herman on Chattel Mortgages, § 15.) And in defining the distinction between a chattel mortgage and an assignment, Bishop on Insurance Debtors, section 105, says: ". . . . The distinction, however, is one clearly defined. A mortgage or deed of trust in the nature of a mortgage is a security for a debt. An assignment is more than that; it is an absolute appropriation of property to the payment of debts. (*Murray* v. *Judson*, 9 N. Y. 73, 83; 59 Am. Dec. 516; Gardner, J., *Hoffman* v. *Mackall*, 5 Ohio St. 124; 64 Am. Dec. 637.) A mortgage creates a lien upon property in favor of the creditor, leaving the equity of redemption still the property of the debtor and liable to sale or encumbrance by him." (*Leitch* v. *Hollister*, 4 N. Y. 211; *Dunham* v. *Whitehead*, 21 N. Y. 131; *McClelland* v. *Remsen*, 3 Abb. N. Y. App. 74; *Van Buskirk* v. *Warren*, 4 Abb. N. Y. App. 457; *Loeschick* v. *Baldwin*, 1 Rob. [N. Y.] 377.)

The fact that Blackburn and Peckham at the date of the writing were justly indebted to sundry creditors in Portland to the full amount specified, and that such creditors had, for the purposes of collection, assigned their several claims to I. R. Dawson, and that the sum specified in such writing is the aggre-

gate of such claims, was in no way controverted upon the trial; and the respondents rest their entire claim in this court on the character of the instrument, and the want of power in one partner to execute the same without the consent of the other.   Nor was there any evidence offered tending in any way to prove that such writing was anything different from what it purports to be upon its face.

2.   Having reached the conclusion that the instrument in question is a mortgage and not an assignment, it remains to be considered whether one partner can, without the consent of the other, execute a chattel mortgage covering the entire partnership property to secure the payment of partnership debts.   It must be conceded that each partner is the general agent of the firm in the transaction of the business of the partnership.   He may dispose of any or all of the property of the firm in the regular course of business, and apply the proceeds in the payment of the firm's debts, or he may deliver the property directly to the creditor in satisfaction of the firm's debts.   Such being the power of a partner over the business of the firm, no reason is perceived why one member of the partnership may not pledge or mortgage the partnership property to secure the firm's debts.   Cases will readily suggest themselves where it would be greatly to the interest of an embarrassed partnership to mortgage its property as security rather than be driven out of business by bankruptcy. And such seems to be the general current of authority.

In *McClelland* v. *Remsen*, 36 Barb. 622, the principle is thus stated: "But the authority of one copartner to sell the copartnership property to a particular creditor or creditors in payment of their debts has been judicially determined and is now the settled law.   The power of a partner to dispose of the property of the firm extends to assignments of it as security for antecedent debts as well as for debts to be thereafter contracted on account of the firm."   And this case was affirmed by the court of appeals. *McClelland* v. *Remsen*, 3 Abb. N. Y. App. 74, and *Mabbett* v. *White*, 12 N. Y. 442, is to the same effect.   And the same principle is announced in *Patch* v. *Wheatland*, 8 Allen, 102; *Nelson* v. *Wheelock*, 46 Ill. 25; *Graser* v. *Stellwagen*, 25 N. Y. 315;

*Tapley* v. *Butterfield*, 1 Met. 515; *Sweetzer* v. *Mead*, 5 Mich.
107; *Deckard* v. *Case*, 5 Watts, 22; 30 Am. Dec. 287; *Fromme*
v. *Jones*, 13 Iowa, 474; *Gates* v. *Bennett*, 33 Ark. 475; Jones
on Chattel Mortgages, § 46; Herman on Chattel Mortgages,
§ 118; *Garrett* v. *Burlington Plow Co.* 70 Iowa, 697; 59 Am.
Rep. 461.   In the case under consideration no fraud is alleged.
All the parties to the transaction acted in good faith.   The
defendant Dawson did no act violative of the rights of the plaint-
iffs.   The mortgage gave him a preference, but this was a lawful
preference, and one which he had a right to take.   The effect of
it no doubt was to impair the ability of Blackburn and Peck-
ham to pay the plaintiffs, but this is the effect of all preferences
where the debtor is in failing circumstances; but this does not
render such preference unlawful unless expressly declared to be
so by some statute.

   The decree of the court below must therefore be reversed and
the suit dismissed.

   Petition for a rehearing.

   THAYER, J.—It was claimed upon the hearing of this case,
that the instrument signed by Blackburn, in the name of
Blackburn and Peckham, by which their copartnership prop-
erty was attempted to be transferred to Dawson, constituted a
general assignment for the benefit of creditors; that it was not
within the regular course of the partnership business, and as
Peckham was not present when it was executed, and did not
assent thereto, it was void.   After a very thorough consider-
ation of the matter, we came to the conclusion that the said
instrument was only a chattel mortgage, and as it was given to
secure the payment of a *bona fide* indebtedness the said firm was
under to Dawson, and those he represented, it was valid.
Counsel for the respondents upon a rehearing of the case have
pressed upon the attention of the court the question, whether
the instrument is such assignment or is a mortgage, is not
material, as it was executed against the open protest and opposi-
tion of the partner Peckham, and is therefore void.   Whether
the instrument was executed against the protest and opposition

of Peckham is a question of fact, upon which the counsel for the respective parties disagree; nor is the testimony which bears upon it at all conclusive.

There is evidence in the case which tends to prove that Peckham was not in favor of securing the Portland creditors, without securing the farmers for the wheat they had stored with the firm, which had been shipped and sold and unaccounted for. This seems to have been the only ground of opposition to the mortgage. Peckham did not pretend, nor did respondents' counsel claim, but that the Portland creditors were entitled to have their debts secured. The parties all acknowledge that it was a just indebtedness. Peckham was evidently willing to secure it, but through a sense of right, or an apprehension that he might be charged with the embezzlement of the wheat, insisted upon the security extending to both sets of claims. What the relative merits of the two may be is not necessary to inquire, as the question raised by the counsel goes to the power of a partner to give such a mortgage in any case against the express wishes of his copartner. I do not think a partner would have any right to mortgage the partnership effects to secure a liability not arising out of the partnership transactions, against the dissent of his copartner, such as the liabilities of the individual partner executing the mortgage. But to mortgage the property of the copartnership in good faith, to secure a valid existing indebtedness against the firm, presents a different question.

In the latter case, it seems to me, that it would not matter whether the other partner assented or dissented. The creditor would have an undoubted right to seize and sequester the property in order to obtain a satisfaction of his demands, and I cannot understand why one of the partners would not have the right to turn it over to him as a security therefor, if the other did object to his doing so. "By the act of entering into the copartnership," as was said in *Wilkins* v. *Pearce*, 5 Denio, 544, "each of its members became clothed with full power to make any and every contract within the scope and limits of the copartnership business. All such contracts will therefore be absolutely binding upon the several members. This power is

incident to the copartnership relation, and must exist in defiance of expostulations and objections while the relation endures."

If the act of the partner were of such a character that it would have the effect to dissolve the copartnership, or if it related to a matter outside of the copartnership business, I should regard the question in a different light. Then each of the partners would be entitled to be consulted in regard to it, and have the right to object to its being done; but I am not able to conclude that a partner, after having tacitly agreed that the other members of the firm shall have authority to represent it in all copartnership transactions, may suspend such authority at his own will or caprice, especially where the proposed act consists in carrying out an obligation which the firm is under to a third person.

Such a view does not appear to me to be reasonable. One partner should certainly have the right to pay off a debt due a creditor of the firm from its assets, notwithstanding the remonstrance of the other partner, and I am unable to discover any difference in principle in the two cases. If the authority of a partner to transact business of the firm within the scope of the partnership could be abruptly revoked, the agreement which constitutes the foundation of the relation would be very insecure; it would be, in effect, that each partner should have authority to manage the business of the firm, so long as the other members assented to it. That, however, is not the nature of the agreement; it is that each of them shall be the agent of the partnership, and empowered to conduct its affairs so long as it continues. If the rule were as contended for, an obstinate partner could at any time interpose and prevent the continuance of the business, however much it might affect the credit and reputation of the other members.

A partner would certainly have no standing in a court of justice to demand that a sale or mortgage of the property of the company, made in good faith in payment of, or as security for a *bona fide* debt due from it, should be set aside. And if a partner could not enforce such relief, how could the other creditors of the company be allowed to claim that the sale or mortgage

was a nullity? If such transactions cannot be upheld, honesty and fair dealing must be declared to be unlawful.

I see no reason for changing the former decision of the court in this case, and am in favor of redeclaring it.