MARSHALL, Respondent, *v.* LIVINGSTON NATIONAL BANK, Appellant.

[Argued November 19, 1891. Decided December 14, 1891.]

Assignment for Benefit of Creditors— *Chattel mortgage— Wage-workers' law.*
—Where the effect of an instrument conveying personal property is a transfer of a debtor's property to a creditor, with power to make an immediate sale of the same and render the overplus, after satisfying the debt therein described, to the debtor, which debt is made to be due at once, the transaction, though under the name and in the form of a chattel mortgage, will be regarded as an assignment and within the operation of section 2050, fifth division of the Compiled Statutes, making the wages of an employee of the assignor a preferred claim where the services were rendered within sixty days immediately preceding such assignment.

Same.—It is no objection to an assignment for the benefit of creditors that it is made to a creditor of the assignor, and not to a third person having no interest therein. (*Flanders* v. *Murphy*, 10 Mont. 398, affirmed.)

*Appeal from Sixth Judicial District, Park County.*

Action to recover wages from assignee of insolvent debtor. The cause was tried before Henry, J., upon an agreed statement of facts. Plaintiff had judgment below.

Statement of the case by the judge delivering the opinion.

This case was tried upon an agreed statement of facts, made and submitted under the provisions of the statute.

The agreed statement sets forth as follows: The defendant was a banking corporation, duly organized, etc. On June 2,

1891, E. C. Waters was operating the Albemarle Hotel, in the city of Livingston, Park County, Montana.   He was the owner of personal property in the hotel, which is described in the chattel mortgage below mentioned.   The description covers eight type-written pages, and appears to be a detailed list of a large quantity of hotel supplies and furniture which were used in the hotel.   He was also the owner of certain household goods and live stock situated on a ranch near said city, and which was used by Waters in supplying the hotel.

On June 2, 1891, said Waters made a chattel mortgage of all his property in said hotel and on said ranch to the defendant, comprising all the personal property of said Waters in the said county of Park, to secure the payment of an existing indebtedness, consisting of four promissory notes, due, respectively, May 7th, July 14th, July 15th, and July 16th, all in 1891, aggregating $5,737.09.   The mortgage authorized the defendant to immediately take possession of said property, and to sell the same, and apply the proceeds to the payment of said indebtedness.   A copy of the mortgage is made part of the statement. It provides that the mortgagee, the defendant, is authorized to sell the said property at once, at private or public sale, and out of the proceeds to retain the principal and interest of the notes, and to pay the overplus, if any there be, to the mortgagor; that upon the execution of the mortgage the bank, defendant, took possession of the property, and proceeded to dispose of the same.   The mortgage was given on account of the inability of the mortgagor to pay the notes above mentioned.   The mortgage was made in good faith, and not for the purpose of securing any other creditor than the bank.   One of the notes was also signed by M. B. Waters, and one by L. C. Phelps.   The latter note is fully secured by the Phelps signature.   As additional security for the said notes, the bank holds a mortgage on certain real estate, described.

On said second day of June, 1891, the said Waters was indebted to the plaintiff in the sum of $85.98 for services rendered as a clerk in said hotel, within sixty days prior to June 2d. On June 3d plaintiff served upon defendant a duly verified claim for the amount mentioned, in accordance with the provisions of chapter 121, division 5, Compiled Statutes.   The bank refused

to pay said claim, or allow it as a lien prior to the lien of the mortgage.

The point in controversy, submitted upon this statement, was, is the claim of the said Marshall, plaintiff, entitled to be paid out of the proceeds of the mortgaged property before any of those proceeds are applied to the payment of the notes thereby intended to be secured, or any of them?

The statute upon which plaintiff relied, and which was presented to the District Court for construction, in connection with the facts, is as follows: "Sec. 2050. That in all assignments of property made by any person, association, corporation, co-partnership, chartered company, or corporation, to trustees or assignees, on account of inability of assignor at the time of the assignment to pay his or their debts, or in proceedings in insolvency, the wages of the miners, mechanics, salesmen, servants, clerks, or laborers, employed by such assignor, for services rendered within sixty days immediately previous to such assignment, not to exceed $200 for each person, are preferred claims, and must be paid by such trustees or assignees before any other creditor or creditors of such assignor."

The statute provides for a similar preference in favor of wage-workers, in case of an attachment or execution against their employer.

The District Court held that the plaintiff was entitled to his lien under the provisions of the statute, and rendered an appropriate judgment, from which the defendant appeals.

*Savage & Day*, for Appellant.

Section 2050 of the Compiled Laws of Montana, upon which the claim of plaintiff to priority is based, provides that in "all assignments of property made by any person," etc., "to trustees or assignees on account of the inability of the assignor at the time of the assignment to pay his debts, or in proceedings in insolvency, the wages of clerks," etc., for services rendered the assignor within sixty days immediately previous to such assignment, are preferred claims, and the question to be answered is whether the instrument so given to the bank is an assignment within the meaning of this section. The statute under consideration, in its present form, first appears, so far as our

investigation discloses, in the acts of Pennsylvania, 1854 (Purd. Dig. Brightly [10th ed.], p. 91, § 4), and is *verbatim* the present section of our statute. There had been an earlier statute in Pennsylvania, giving priority to persons employed in certain manufactories in certain counties. The act next appears in the acts of California in 1873–74 in exactly the same language as is now used in our section, which act contains all of the Montana Act of March 3, 1887 (ch. 121, fifth div. Comp. Stats.), without any modification, except section 5. The object of this first section is clearly to secure to wage-workers their wages upon the insolvency of their employer. The statute being remedial, the court will give to it a liberal construction, keeping in mind the object of the legislature, as that object is expressed in the statute. The court will not, however, extend the law beyond the legislative intent, even though there be shown to be an evil not remedied by the law. And in construing a statute containing words which have definite sense or meanings at common law, the words shall be restricted to that sense. (Dwarris on Statutes, 637, 640, 712; *Smith* v. *Harmon*, 6 Mod. 143; *Buckner* v. *Real Estate Bank*, 5 Ark. 536; 41 Am. Dec. 105; *Carpenter* v. *State*, 4 How. (Miss.) 163; 34 Am. Dec. 116.)

In Montana there is no statute controlling the distribution of the estate of an insolvent, either under a voluntary or involuntary assignment, except in so far as this statute attempts to control it. The term "assignment," as used in the act, is then one of common-law origin, and if at common law it had a distinctive meaning, that meaning must be here given it. "Assignment" originally meant "the transferring and setting over to another of some right, title, or interest in things in which a third party, not a party to the assignment, has a concern and interest." (1 Bacon's Abridgment, 329.) In most of its applications at common law it seemed to imply the relation of debtor and creditor, and hence it was most generally applied to those transfers by a failing debtor for the benefit of his creditors, and from the context of the statute under consideration, the term is clearly here used in its restrictive sense as a transfer by an insolvent for the benefit of his creditors, and not in its larger sense of transfers in general, as applied to assignment of bills and notes and other negotiable instruments. The voluntary

assignment for the benefit of creditors is in many respects peculiar to American law and practice, and the term has acquired in this country a technical meaning. (Burrill on Assignments, par. 4; *Grover* v. *Wakeman*, 11 Wend. 187; 25 Am. Dec. 624.) It means a transfer without compulsion of law by a debtor of some or all of his property to an assignee or assignees in trust, to apply the same, or the proceeds thereof, to the payment of some or all of his debts, and to return the surplus, if any, to the debtor. (*Bartlett* v. *Teah*, 1 McCrary, 176; *Wiener* v. *Davis*, 18 Pa. St. 333.)

This assignment always implies a trust and contemplates the intervention of a trustee, and hence an assignment or transfer directly to a creditor or creditors, not upon trust, is not a voluntary assignment for the benefit of creditors. (*Dickson* v. *Rawson*, 5 Ohio St. 218.) Whether it is so in trust, and the assignee or grantee such trustee, depends upon the question whether by the terms of the instrument, or by necessary implication, the assignee or grantee is liable to account to the creditors for the property in his hands and for the manner in which he disposes of it. If he could be so compelled to account, the instrument is an assignment at common law, no matter what its form. (*Dickson* v. *Rawson*, 5 Ohio St. 218.) As thus defined, the term at common law did not embrace a sale, as a sale was a transfer in the ordinary course of business for a consideration actually paid, while the assignment grew out of the embarrassment of business, and had for its consideration a precedent or subsisting debt. It was also to be distinguished from a mortgage, which was a transfer to a creditor by way of security for the payment of a debt, whereas an assignment is an absolute appropriation of the property to its payment. (*Briggs* v. *Davis*, 21 N. Y. 574; *Leitch* v. *Hollister*, 4 N. Y. 211; *Curtis* v. *Leavitt*, 15 N. Y. 9.) While the distinction between mortgages and assignments for the benefit of creditors has been universally recognized where the mortgage, or instrument in the form of a mortgage, covers but a single piece of the property, there exists some conflict where the instrument conveys all of the property of the debtor and he parts with his dominion over it. (*Dana* v. *Stanford*, 10 Cal. 268; *Lawrence* v. *Neff*, 41 Cal. 566; *Barker* v. *Hall*, 13 N. H. 298; *Low* v. *Wyman*, 8 N. H. 536; *Fromme*

v. *Jones*, 13 Iowa, 475; *Farwell* v. *Howard*, 26 Iowa, 384; *Peck* v. *Merrill*, 26 Vt. 686; *McGregor* v. *Chase*, 37 Vt. 229; *Gage* v. *Chesebro*, 49 Wis. 490; *Richmond* v. *Mississippi Mills*, 52 Ark. 30; *Turner* v. *Watkins*, 31 Ark. 437; *Fecheimer* v. *Robertson*, 53 Ark. 101; *Moore* v. *Meyer*, 47 Fed. Rep. 99; *White* v. *Cotzhausen*, 129 U. S. 329; *Weber* v. *Mick*, 131 Ill. 520; *Union Bank* v. *Kansas City Bank*, 136 U. S. 223.) The case most strongly relied on by plaintiff in the court below was the case of *Straw* v. *Jenks*, 6 Dak. 414. This case did not consider the common-law definition of the term "assignment." The cases cited in the opinion, viz., *Harkrader* v. *Leiby*, 4 Ohio St. 602; *Dickson* v. *Rawson*, 5 Ohio St. 224; *Burrows* v. *Lehndorff*, 8 Iowa, 96; *Lampson* v. *Arnold*, 19 Iowa, 479, and *Winner* v. *Hoyt*, 66 Wis. 227; 57 Am. Rep. 257, will, upon investigation, be found to be cases in which a trust was created by the instruments for other than the grantee therein. The opinion also relies on the case of *White* v. *Cotzhausen*, and the overruled cases in the United States Circuit Court for Missouri, which can furnish no authority for such holding. In *United States* v. *McLellan*, 3 Sum. 345 (opinion by Mr. Justice Story), and in *Bouchaud* v. *Dias*, 1 N. Y. 201, it is held that the term "assignment" does not include an assignment for the security of one creditor, nor does the act prohibit transfers of the debtor's property by way of security. (*United States* v. *Fisher*, 2 Cranch, 358; *United States* v. *Hooe*, 3 Cranch, 73.) Again, statutes must be construed in accordance with decisions of the State from whence they are taken. (*Case* v. *Cushman*, 3 Watts & S. 544; 39 Am. Dec. 47; *American Print Works* v. *Lawrence*, 3 Zab. 590; 57 Am. Dec. 420.) This act is taken directly from California or Pennsylvania. At the time of its enactment in California there were statutes regulating assignments for benefit of creditors by the voluntary act of the debtor, and statutes regulating insolvency proceedings. (See Insolvency Act of 1852, and Civ. Code, div. 4, pt. 2, tit. 3.) The Supreme Court of California had already construed those acts, and held that the term "assignment" as used therein did not include a mortgage of even all of the debtor's property, nor a transfer directly to the creditor. (*Dana* v. *Stanford*, 10 Cal. 269; *Lawrence* v. *Neff*, 41 Cal. 566.) In Pennsylvania the general statute on the sub-

ject of assignments for benefit of creditors limits its operations
to "assignments in trust," and it has been there universally held
that a transfer direct to a creditor was not an "assignment."
(*Wiener* v. *Davis*, 18 Pa. St. 333; *Claflin* v. *Maglaughlin*, 65
Pa. St. 492.)  Nor does it include a mortgage.  (*Vallance* v.
*Miners' Life Ins. etc. Co.* 42 Pa. St. 441.)  In the case of
*Flanders* v. *Murphy* the complaint alleged that the transfer was
made on account of the inability of the debtor to pay his debts
and on account of the attachment, and no other reason was
shown to exist.  By the agreed case the transfer is positively
alleged to have been made for the *bona fide* purpose of securing
debts then due and to become due.

*A. J. Campbell*, for Respondent.

Section 2050 of the Compiled Laws of Montana, upon
which the claim of plaintiff to priority was based, provides that
in all assignments of property made by any person . . . . to
trustee or assignee on account of the inability of the assignor
at the time of the assignment to pay his debts . . . . services
rendered the assignor within sixty days immediately previous
to such assignment are preferred claims; and the question to
be answered is whether the instrument so given to the bank
was an assignment of property within the meaning of this sec-
tion.  Section 2054 provides that nothing in this act shall be
construed to affect any lien, encumbrance, or mortgage held by
any creditor of said employee prior to the said sixty days.  By
the last section it will be observed that the legislature intended
to make a claim prior to a mortgage lien.  This section was
under consideration by this court in the case of *Flanders* v.
*Murphy*, 10 Mont. 398, and the decision would seem conclusive
of the question raised in the case at bar.  This act is in its
character remedial, and must, therefore, be liberally construed.
No insolvent, having in view the disposition of his estates, can
be permitted to defeat its operation by any shift under the form
of law.  (*White* v. *Cotzhausen*, 129 U. S. 329.)  If, as contended
by the appellant, the phrase "assignment of property," as used
in said section, only applies to the voluntary assignment for the
benefit of creditors, it would defeat the very object for which
the law was passed, which would be allowing a debtor, unable

to pay his debts, to accomplish by indirect means that which
the law prohibits to be done directly. Any debtor in failing
circumstances could connive with one or more of his creditors
and defeat the operation of the statute passed for the protection
of wage-workers. "To say that the wage-workers' law should
not operate, because the assignment is made to a creditor di-
rectly and for his sole benefit, instead of being made to a third
disinterested person, and for the benefit of more than one cred-
itor, would be to fritter away the law in unsubstantial verbal
criticism." (*Flanders* v. *Murphy, supra.*) It can make little
difference what the form of the instrument is, it is the résult
which it accomplishes that will determine its character. (*White*
v. *Cotzhausen, supra; Straw* v. *Jenks,* 6 Dak. 414; *Richmond*
v. *Mississippi Mills,* 52 Ark. 30; *State* v. *Dupuy,* 52 Ark. 48;
*Collier* v. *Wood,* 85 Ala. 91; *Wilks* v. *Walker,* 22 S. C. 108;
53 Am. Rep. 706.)

"Assignment," as used in section 2050, is in a general sense.
Webster's definition of an assignment in law is given to be:
"(1) A transfer of title or interest by writing, as of a lease,
bond, note, or bill of exchange; a transfer of the whole of some
particular estate or interest in lands. (2) The writing by
which an interest is transferred to another. (3) The trans-
fer of the property of a bankrupt to certain persons called
assignees, in whom it is vested for the benefit of creditors."
Anderson in his law dictionary states an assignment to be "a
transfer of property to another for himself or creditors," and
also refers to conveyances and transfers. The idea is essentially
that of a transfer by one party to another of some species of
property or interest. (*High* v. *Sackett,* 34 N. Y. 451.) It is
contended that this section applies only to voluntary assignments
for the benefit of creditors as the same exists at common law.
The common-law definition of a voluntary assignment for the
benefit of creditors is: "A voluntary transfer by a debtor of
all or a part of his property, to an assignee or assignees in trust,
to apply the same, or the proceeds thereof, to the payment of
some or all of the assignor's debts, and to return the surplus,
if any, to him, is an assignment at common law." (1 Am. &
Eng. Encycl. of Law, 845, 846, and authorities cited; *Farwell*
v. *Cohen,* Ill. June 10, 1891, 28 N. E. Rep. 38.) A voluntary

assignment for the benefit of creditors necessarily implies a trust. In the case of *Wallace* v. *Wainwright,* 87 Pa. St. 263, the court in the syllabus says: " A trust exists where the legal interest is in one person and the equitable interest in another." The facts in this case come within this definition of a trust, and, therefore, a voluntary assignment at common law. The mortgagee is to have immediate possession, the property mortgaged being of such a character that the mortgagee is obliged to take immediate possession of the property to make the same valid as against creditors, and is given as security for all of the notes therein mentioned, to sell the property at once by private sale, and was so selling the property, for the purpose of raising a fund to pay the notes which it held, a part of which was secured by other makers and indorsers, who were solvent, which fund was as much for the benefit of said signers and indorsers, as for the appellant and the mortgagor, and thereby creating a trust fund for the above mentioned purposes. The cases are innumerable in which it has been held that a transfer of substantially all of the debtor's property by reason of his inability to meet his obligations, or his insolvency, providing for the immediate possession and the immediate sale of the same, thereby surrendering his business and his means of making money to discharge his other obligations, is a voluntary assignment within the meaning of the law, whatever the form of the instrument by which this is accomplished. (*Straw* v. *Jenks, supra; White* v. *Cotzhausen, supra; Richmond* v. *Mississippi Mills, supra; State* v. *Dupuy, supra; Boscom* v. *Rainwater,* 30 Mo. App. 483; *Meinhard* v. *Strickland,* 29 S. C. 491; *Collier* v. *Wood, supra; Wallace* v. *Wainwright, supra; Wilks* v. *Walker, supra; Farwell* v. *Cohen, supra.*) On a careful examination of the authorities cited by the appellant, it will be observed that they hold substantially the same as the cases above cited, or they will be found to be upon an entirely different state of facts from the case at bar. The California decisions cited by the appellant are based on a statute which prohibits the assignment of property to a trustee for the benefit of creditors, and the decisions are to the effect only that a chattel mortgage given by a debtor in failing circumstances does not come within the operation of the statute.

De WITT, J. — E. C. Waters was a debtor. He transferred all his personal property within the jurisdiction of the court to the Livingston National Bank, which was a creditor to the amount of $5,737.09, and which indebtedness Waters was unable to pay, and by reason of which inability he made the transfer of said property. We think that it is clear, from the agreed case, that Waters did this on account of his inability to pay his debts.

What was this transfer — a chattel mortgage or an assignment? It is called a "chattel mortgage" in the instrument and in the language of the agreed case. But we have the whole instrument before us as a part of the agreed case, and we have all the facts, and we are not concluded from inquiring into the nature of the transaction by any inscription that the parties have put thereon.

Upon an examination of the instrument and the facts, do we find the essential characteristics of a chattel mortgage? One of the elements of a mortgage is that it is a security for a debt. It is not a payment of a debt, or a present instant means for the payment of a debt.

The transaction at bar was a transfer at once of all the debtor's property within the jurisdiction to a creditor, with instructions to sell the same, at private or public sale, and to apply the proceeds to the payment of a debt of such creditor of $5,737.09, which debt the debtor and creditor made to be due at once. Furthermore, the creditor, after the payment of such debt, is to render the overplus from the proceeds of the sales to the debtor. The court will look through forms, and arrive at the substance. *White* v. *Cotzhausen*, 129 U. S. 329, is an instructive case upon this point, and its doctrine in this respect has not been overruled in *Union Bank* v. *Kansas City Bank*, 136 U. S. 233, as suggested by counsel. Therefore regarding the transaction at bar, and looking beyond the partial chattel mortgage form and name, we do not find the elements of a mortgage security.

Again, a characteristic of a chattel mortgage is that there should be a defeasance. Is there one here? We find this clause in the mortgage, "and these presents shall be void if such payment be made [referring to the notes, which are set out

in full] according to the terms of said respective promissory notes." But following this provision, the instrument sets forth: "It is further provided that said second party shall have the immediate possession of all said above described property, and shall have the right, at its option, to immediately declare all of said debts to be due, and is hereby authorized and empowered to sell all and singular the above-described chattels, with all and every of the appurtenances, or any part thereof, at public or private sale, and out of the money arising therefrom to retain the said principal and interest, and the costs of making such sale, and the attorney's fees, and the overplus, if any there be, to be paid over to the said first party, his heirs or assigns."

So it appears that there is a defeasance in words. It is upon payment of the notes as provided. But one note was upon its face past due, and the provisions of the instrument make the three other notes due instantly, upon the option of the second party in the instrument, which option that party exercised instantly. Therefore, the whole indebtedness was due at once. The default of the debtor was complete at the time of the transaction as set forth in the agreed case. There was no opportunity for defeasance in the manner suggested in the instrument, for the instrument itself, and the contemporaneous acts of the parties, emasculated the defeasance proposed in the document. Therefore no defeasance was actually contemplated or provided in the transaction.

The instrument called a "chattel mortgage" we find shorn of almost all its essential elements as such, except its label, which latter does not commend itself to our mind with any force. The District Court called this instrument and transaction an "assignment," and applied thereto the provisions of the wage-workers' law (§ 2050), and held that thereunder the respondent was entitled to a lien for his wages upon the funds in the hands of the appellant arising from the proceeds of the sales of the property.

Appellant bases his argument largely upon a line of cases, some of which are as follows: *Dana* v. *Stanford,* 10 Cal. 269; *Lawrence* v. *Neff,* 41 Cal. 566; *Cowles* v. *Ricketts,* 1 Iowa, 582; *Fromme* v. *Jones,* 13 Iowa, 474; *Farwell* v. *Howard,* 26 Iowa,

381; *Peck* v. *Merrill,* 26 Vt. 687; *McGregor* v. *Chase,* 37 Vt. 225; *Gage* v. *Chesebro,* 49 Wis. 486; *Vallance* v. *Miners' Life Ins. etc. Co.* 42 Pa. St. 441; *Fecheimer* v. *Robertson,* 53 Ark. 101; *Moore* v. *Meyer,* 47 Fed. Rep. 99; *Union Bank* v. *Kansas City Bank,* 136 U. S. 223. But those were cases from States where assignments for the benefit of creditors with preferences were forbidden by statute. Instruments and transactions which upon their face were mortgages, or transfers in payment, or confessions of judgment, were sought to be construed as attempted preferential assignments, and were sought to be so construed in order to avoid them by reason of such assignments being prohibited by statute. We have no such statutory prohibition in this State, and, in the case at bar, we are not considering a transaction which appears *prima facie* to be a mortgage. An instrument, a mortgage on its face, may be a mortgage, and it may be an assignment. A determination may be a difficult and delicate task, depending upon the particular facts of each case, and one case cannot be wholly a precedent for another. But in the case before us the first inspection discloses that the transaction was not a mortgage, and we are not confronted with the difficulty of deciding whether an apparent mortgage should be construed as an assignment. Therefore the transaction at bar was not a chattel mortgage. Again, it was not a delivery of the goods as a payment of the debt, for the bank was to receive the goods, to sell them at private or public sale, collect the proceeds, apply them upon the costs, expenses, and indebtedness, and pay the overplus to Waters.

If it were unquestioned by the parties to this litigation that the acts narrated were an assignment, what else would or could have been done that was not done? What fact could have brought the transaction more clearly within an assignment in contemplation of the wage-workers' law? The debtor was unable to pay his debts. By reason of that inability, he transferred at once all his property within the jurisdiction to the bank. The bank was not to hold it as security, or accept it as payment. It was to sell, collect the proceeds, to pay expenses, to pay the notes, and not await a payment by the debtor, and thus as well to save a solvent indorser on one of the notes; and, after these payments, the bank was to account for any balance

to the debtor.   What further ear-mark of an assignment could be present we fail to discover.   We are of the opinion that the transaction was an assignment, within the operation of the wage-workers' law.   An instructive and a well-considered case, and a review of the authorities, we find in the Supreme Court of the late Territory of Dakota.   (*Straw* v. *Jenks,* 6 Dak. 414.   See, also, *White* v. *Cotzhausen,* 129 U. S. 329; *Richmond* v. *Mississippi Mills,* 52 Ark. 30; *Collier* v. *Wood,* 85 Ala. 91; *State* v. *Dupuy,* 52 Ark. 48; *Wilks* v. *Walker,* 22 S. C. 108; 53 Am. Rep. 706; *Ordway* v. *White,* 80 Ala. 244; *Meinhard* v. *Strickland,* 29 S. C. 491; *Farwell* v. *Cohen,* Ill., June 10, 1891, 28 N. E. Rep. 35.)

But it is objected by the appellant that the transaction cannot be an assignment, because it is to a creditor, who is the beneficiary.   Counsel cite, as the definition of an "assignment," from Bacon's Abridgment, " the transferring and setting over to another of some right, title, or interest in things in which a third party, not a party to the assignment, has a concern and interest."   He contends that an assignment cannot be to one of the creditors of the assignor, but that it can be to a third person only for the benefit of creditors.   He cites the following language from *Dickson* v. *Rawson,* 5 Ohio St. 218: " Whether it is so in trust (that is, a conveyance under consideration), and the assignee or grantee such trustee, depends upon the question whether, by the terms of the instrument, or by necessary implication, the assignee or grantee is liable to account to the creditors for the property in his hands, and for the manner in which he disposes of it."   But the opinion from which the foregoing is quoted goes on at once to say: " If a court of chancery, at the instance of the creditor, would compel him thus to account, the character of the transaction and his own position are thereby determined; and the statute then steps in, and enlarges the trust, and makes it inure to the benefit of all the creditors, and distributes the fund to all, in proportion to their respective demands."

So, adapting the language of the Ohio case to the case at bar, the court, " at the instance of the creditor," the wage-worker in this case, compels the bank to account, and the character of the transaction is determined, and the wage-workers' statute steps in and makes the transaction inure to the benefit of the wage-

worker. The instrument itself does not declare the trust, but the statute and the law construe it into the transaction.

Appellant does not cite authorities to the effect that a creditor may not be the assignee in an assignment for the benefit of creditors, but he argues his conclusion from cases that have held that a particular transfer in controversy to a creditor was not an assignment, but a mortgage, or a payment, or something other than an assignment.

We do not understand that it is the law that one of the creditors may not be an assignee. (Burrill on Assignments, p. 66, and cases cited; also 1 Am. & Eng. Encycl. of Law, p. 851, cases in note 4; also *Ordway* v. *White, Straw* v. *Jenks,* and other cases *supra.*)

In *Flanders* v. *Murphy,* 10 Mont. 398, we have held views of which those now expressed are a confirmation. This second consideration of the application of the wage-workers' law satisfies us that cases arising thereunder must stand upon their own particular facts. It is a law which is liable to attempts at evasion; not suggesting, however, that the case at bar is such an attempt. But herein, as in *Flanders* v. *Murphy,* we are of opinion that the facts fully warrant the application of the wage-workers' lien. And so all cases must be decided upon a diligent and patient inquiry into the particular facts.

That statute was enacted for a purpose. Wage-workers were not a well-protected class of creditors. No class contributes more directly to the fund from which the debtor satisfies his creditors; and their contribution extends, usually, to the moment of the crisis between debtor and creditors. They are the least likely or able to attach their employer, or precipitate his business failure. They are not among the vigilant and oppressive creditors. It would seem that, by reason of these considerations, the law has treated them tenderly; and we must construe that statute so as to secure the accomplishment of its intent. Any other view of the case at bar than the one we have adopted would leave the door wide open for the failing debtor and his pursuing creditor to set at naught the wage-workers' law by indirection, where they would not attempt to do so directly.

The judgment of the District Court is affirmed.

*Affirmed.*

BLAKE, C. J., and HARWOOD, J., concur.