BEALL v. COWAN et al.

(Circuit Court of Appeals, Ninth Circuit. June 1, 1896.)

No. 256.

Assignments for Creditors — Validity — Mortgages Securing Preference.
The Oregon statute declaring invalid general assignments for creditors, unless made for all creditors alike (Hill's Laws, c. 28, § 3173), does not prevent an insolvent debtor from preferring one creditor to another, and does not apply to or invalidate a mortgage made by an insolvent to trustees to secure certain creditors therein named, even though the ultimate effect of the mortgage may be to distribute the whole of the insolvent's estate to such creditors, in the same manner as if an assignment had been made in the mode interdicted by the statute. Hembree v. Blackburn, 19 Pac. 73, 16 Or. 153, and Stout v. Watson, 24 Pac. 230, 19 Or. 251, applied and followed.

Appeal from the Circuit Court of the United States for the District of Oregon.

This was a suit in equity by H. M. Beall, receiver of Linn County National Bank, against J. L. Cowan and others, to set aside certain mortgages made by said Cowan to his co-defendants in trust as security for payment of certain creditors. The circuit court dismissed the bill, and the complainant has appealed.

John M. Gearin, for appellant.

George H. Williams, for appellees.

Before GILBERT and ROSS, Circuit Judges, and MORROW, District Judge.

GILBERT, Circuit Judge. Prior to the 17th day of June, 1893, one J. L. Cowan was carrying on a banking business, and owned and managed the bank at Lebanon, in Linn county, Or., known as the Bank of Lebanon. At the same time he was president of the Linn County National Bank, located at Albany, in the same county and state. On June 17, 1893, the Bank of Lebanon failed, and on June 19, 1893, the Linn County National Bank closed its doors, and H. M. Beall, who is the appellant in this case, was appointed receiver by the controller of the currency. When the Bank of Lebanon failed, it owed the Linn County National Bank the sum of $23,209.60. The receiver brought an action against Cowan to recover the said sum, and in the said action an attachment was issued and levied upon all the property which is the subject of the present suit. Judgment was obtained in the action against Cowan on the 8th day of January, 1894, and in such judgment an order was made for the sale of the attached property. On June 27, 1893, Cowan executed to W. B. Donaca, J. M. Settle, and J. A. Roberts a chattel mortgage upon certain personal property and a mortgage upon certain real estate, and upon the 14th day of September, 1893, the plaintiff, as receiver, brought this suit in the circuit court of the United States for the district of Oregon to set aside said transfers, charging in the bill that the same were fraudulent as to certain creditors of J. L. Cowan, who were not made the beneficiaries of said mortgages, and that the two transfers are really one, and constitute an attempt to make a general assignment for the benefit of creditors, and contain preferences in favor of certain creditors, in violation of section 3173, c. 28, Hill's Ann. Laws Or. The chattel mortgage is as follows:

"In consideration of the sum of twenty-eight thousand dollars ($28,000) to me in hand paid by W. B. Donaca, J. M. Settle, and J. A. Roberts, for themselves, and as trustees for each and all of the following named persons, they and each of them assenting thereto [then follow the names of a large number of depositors], and for all other actual depositors of the same class and kind who may hereafter assent hereto within thirty days of the date hereof, of the banking institution known as the Bank of Lebanon (a firm composed of J. L. Cowan), overdrafts and correspondents excluded, J. L. Cowan, for myself, and as and for the said Bank of Lebanon, do hereby sell and assign, set over, and transfer unto the said W. B. Donaca, J. M. Settle, and J. A. Roberts, as trustees, the following described personal property, to wit: One large McNeal Urban safe, and all of the furniture and fixtures, consisting of chairs, desks, and other furniture as is used in a bank, and all

books, checks, and records and papers of every kind and description now contained in the building in Lebanon, together with all the bills, notes, and securities of every kind, nature, and description situated and contained in the said Bank of Lebanon, and the vault and safe therein, as well as that due and as that to become due, and all moneys, checks, drafts, and bills of exchange, an itemized account of which cannot now be given, but all of which, and all of the property, rights, and credits herein mentioned, is this day, and as a part hereof, transferred and delivered and assigned, indorsed, and delivered hereby unto the said W. B. Donaca, J. M. Settle, and J. A. Roberts, and this shall be and is to be and take the place of a formal indorsement by me. All of which is now situated and contained in the said Bank of Lebanon, Linn county, Oregon. This instrument is intended as a chattel mortgage to secure the said W. B. Donaca, J. M. Settle, and J. A. Roberts, themselves as depositors, and through them, as trustees, to secure each and all of the actual depositors of the said Bank of Lebanon, as well as Fleischner, Mayer & Co., attaching creditors, in the sum of twenty-eight thousand dollars ($28,000), to which I hereby acknowledge to be due and owing to them, and which I hereby agree to pay one day from this date, without grace. In case of the default of a payment of the said sum, with interest from date at the rate of eight per cent. per annum, in accordance with the terms thereof, then, in that case, the said trustees are hereby authorized and empowered to sell the personal property herein described at public or private sale, as they may see fit, and to collect and reduce to money in their own names each and all of the notes and bills, checks, drafts, and other securities, claims, accounts, and choses in action in whatever way and manner to them may seem best, and out of the proceeds thereof pay each and all of the said depositors of the said Bank of Lebanon and the said Fleischner, Mayer & Co., from time to time, pro rata, until the payment of each and all of their several claims and demands; and thereafter, if any balance remains, pay the same to the undersigned, his heirs or assigns. In witness whereof, I have hereunto set my hand and seal this 27th day of June, 1893.

"J. L. Cowan. [Seal.]"

## The conveyance of the real estate is as follows:

"This indenture witnesseth that J. L. Cowan and S. E. Cowan, his wife, for the consideration of the sum of twenty-eight thousand dollars ($28,000.00), to us paid, have bargained and sold, and by these presents do bargain and sell and convey, to W. B. Donaca, J. M. Settle, and J. A. Roberts, as trustees for each and all of the following named persons, they, and each of them, as well as the said trustees, assenting thereto, to wit [then follows a list of the same creditors who are named in the chattel mortgage], and for all other actual depositors of the same class and kind of the banking institution known as the Bank of Lebanon (a firm composed of J. L. Cowan), who may assent hereto within thirty days from the date thereof, overdrafts and correspondence excluded, the following described premises, to wit [then follows a description of the premises]: hereby giving and granting unto the said trustees hereinbefore named full power and authority to bargain, sell, grant, dispose, and convey said real property in such lots and parcels as to them may seem best, and in such manner and upon such terms as in their judgment will realize the most for the beneficiaries herein named, and those who may hereafter assent hereto within the time limited herein, the proceeds arising from the sale of real property to be disposed of in the manner following, that is to say: First, the same is to be applied in payment of the costs and expenses of making the sales thereof; and, second, the overplus thereof is to be distributed from time to time, as the same accumulates, pro rata upon the claims of each of the beneficiaries herein named, and who may hereafter assent hereto within the time herein limited, in proportion to the amount of their several actual deposits in the banking institution known as the Bank of Lebanon (a firm composed of J. L. Cowan); and, third, the overplus, if any there be, shall be paid to the said J. L. Cowan, his heirs or assigns. To have and to hold the said premises, with their appurtenances, unto the said W. B. Donaca, J. M. Settle, and J. A. Roberts, as trustees, their successors and assigns forever, for the uses and purposes herein set forth and specified.

And I, the said J. L. Cowan, do hereby covenant to and with the said W. B. Donaca, J. M. Settle, and J. A. Roberts, as trustees, their successors and assigns, that I am the owner in fee simple of said premises, and that they are free from all incumbrances, and that I will warrant and defend the same from all lawful claims whatsoever. In witness whereof, we have hereunto set our hands and seals this 27th day of June, 1893 "

The case was heard upon the pleadings and the testimony, and a decree was entered on May 25, 1895, setting aside the transfers above described as being void under the statute of Oregon above referred to, and awarding to the plaintiff the relief prayed for, but imposing upon the plaintiff the condition that within 30 days he waive his preference lien by reason of his attachment and consent to come in with the other creditors of J. L. Cowan who had not attached, in a ratable distribution of the property; and providing that, in case such assent should not be filed by the plaintiff within 30 days, a decree should then be entered dismissing the plaintiff's bill. The plaintiff declined to consent to these terms, and accordingly, on August 1, 1895, a decree was entered dismissing his bill, and awarding to the defendants a judgment for their costs and disbursements. From that decree this appeal is taken, and the only assignment of error is that the court required the plaintiff to waive his attachment lien, and dismissed his bill upon his refusal so to do.

The circumstances under which the transfers were made appear from the record to have been the following: J. L. Cowan was insolvent. He owed about $100,000 to creditors other than those named in the transfers. He testified as follows:

"When the Linn County National Bank concluded not to open its doors on Monday morning, the 19th, before leaving the bank building I assigned 399 shares of my Linn County National Bank stock to various creditors, leaving one share of stock, which I afterwards—perhaps a month afterwards—assigned to William M. Ladd, of Portland. Before that I had transferred to my wife, for money that I owed her, received from her father's estate, the residence property. Immediately after that, in coming on to the streets, I commenced to make a transfer of all the property that I had. The Lebanon creditors were coming in at that time, in the afternoon of that day, I remember, and during the night of the 19th and the day of the 20th I made a transfer to the Lebanon people of all the property attaching to the Lebanon Bank, and all of the real estate held in and about Lebanon. That transfer was not fully consummated to the satisfaction of the Lebanon creditors until the 27th. I did, however, make a transfer of all the property mentioned in the transfer of date 27th on the 20th day of June to Settle, Roberts, and Donaca. * * * I had no other real property at that time besides the real estate mentioned in one of these transfers, nor had I any personal property, nor any note whatever, except what I have now,—some worthless notes and mining stock that was assigned for the payment of a bill due to the Linn County National Bank. * * * What the first paper contained exactly, I don't remember. I didn't scrutinize it, but I suppose it contained that idea, that I wanted the depositors at Lebanon to have what I had."

The statute of Oregon in regard to assignments for the benefit of creditors contains this provision:

"No general assignment of property by an insolvent, or in contemplation of insolvency, for the benefit of creditors, shall be valid unless it be made for the benefit of all his creditors in proportion to the amount of their respective claims." Hill's Ann. Laws Or. § 3173, c. 28.

A similar provision is found in the statutes of many of the states, but there has been a diversity of holding as to its true meaning.

In some it is held that, no matter what the form of the instrument, the court will inquire into the circumstances attending the same, will hear proof concerning the question whether the property is all of the property of the insolvent, whether the transfer, confession of judgment, mortgage, or other instrument is made in contemplation of insolvency, and, if it appear that the transaction involves a disposition of all the property of the insolvent for the payment of one or more creditors in preference to others, it will be regarded as an assignment, and either the assignment or the preference will be held invalid, according as the statute may prescribe. Penzel v. Jett, 54 Ark. 428, 16 S. W. 120; Winner v. Hoyt, 66 Wis. 227, 28 N. W. 380; Bonns v. Carter, 20 Neb. 566, 31 N. W. 381; Marshall v. Bank, 11 Mont. 351, 28 Pac. 312; Straw v. Jenks, 6 Dak. 414, 43 N. W. 941; Hyman v. Barmon (Wash.) 33 Pac. 1076. In others it is held that the court will regard the form of the instrument, and, if it be not in form an assignment, and if it contain a reservation to the insolvent of dominion over his property, as in case of a mortgage, it will not be considered an assignment, notwithstanding that it may have been the intention to dispose of all the property of the insolvent, and to prefer the creditors who receive the same to the exclusion of all others. Crow v. Beardsley, 68 Mo. 435; Hargadine v. Henderson, 97 Mo. 375, 11 S. W. 218; Bell v. Goetter (Ala.) 17 South. 709; Manufacturing Co. v. Woodson (Mo. Sup.) 31 S. W. 1037; Manning v. Beck, 129 N. Y. 1, 29 N. E. 90; Muchmore v. Budd, 53 N. J. Law, 369, 22 Atl. 518; Banking Co. v. Fuller, 110 Pa. St. 156, 1 Atl. 731. Reference must be had, therefore, to the decisions of the state of Oregon to determine the meaning of the statute in question. If the courts of that state have given a construction to the law, it is conclusive upon this court. Said Mr. Justice Field, in Christy v. Pridgeon, 4 Wall. 196:

"An interpretation within the jurisdiction of one state becomes a part of the law of that state, as much so as if incorporated into the body of it by the legislature. If, therefore, different interpretations are given in different states to a similar local law, that law, in effect, becomes by the interpretations, so far as it is a rule for our action, a different law in one state from what it is in the other."

This view of the rule, so declared by the supreme court, is illustrated by the decisions of that court in White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309, and Union Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 10 Sup. Ct. 1013. In the former case the court had under consideration the assignment law of the state of Illinois, the thirteenth section whereof provided as follows:

"Every provision in any assignment hereafter made in this state, providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities within the provisions of the assignment shall be paid pro rata from the assets thereof."

In construing this statute the court followed a line of decisions of the supreme court of Illinois, and held that several written instruments executed contemporaneously by an insolvent in that state to certain creditors for their benefit to the exclusion of all other creditors constituted, under the voluntary assignment act,

but one instrument, and operated as an assignment of the debtor's property for the benefit of all his creditors equally. But the case of Union Bank of Chicago v. Kansas City Bank arose under the laws of Missouri, which provided that:

"Every voluntary assignment of lands, tenements, goods, chattels, effects and credits made by a debtor to any person in trust for his creditors shall be for the benefit of all the creditors of the assignor in proportion to their respective claims." Rev. St. Mo. 1879, § 354.

The court, in construing this provision, pointed to a series of decisions of the supreme court of that state, in which it had been held that the statute was designed to prevent preference of creditors "by assignment," and that it did not avoid deeds of trust in the nature of mortgages, which were only securities for the debts, and in one of which decisions it had been said:

"The distinction is that an assignment is a conveyance to a trustee for the purpose of raising funds to pay a debt, while a deed of trust in the nature of a mortgage is a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance."

And the supreme court, following the supreme court of Missouri, held that a mortgage of the personal property of an insolvent partnership to secure the payment of particular debts of the partnership is valid under the laws of Missouri, and does not operate as a voluntary assignment for the benefit of all its creditors.

There are but two decisions of the supreme court of the state of Oregon, interpreting the statute in question. The first is Hembree v. Blackburn, 16 Or. 153, 19 Pac. 73. In that case an insolvent firm had executed to a trustee a mortgage upon all its property to secure a promissory note, payable on demand, and had provided therein that immediately, and before default in paying the note, the trustee should take possession of the property, and sell and dispose of the same at private sale, and apply the proceeds to the payment of the note, and pay the balance, if any, to the insolvents. The court held that the instrument was not an assignment, and said:

"The distinction, however, is clearly defined. A mortgage or deed of trust in the nature of a mortgage is a security for a debt. An assignment is more than that; it is an absolute appropriation of property to the payment of debts. A mortgage creates a lien upon property in favor of the creditor, leaving the equity of redemption still the property of the debtor, and liable to sale or incumbrance by him."

The second case is that of Stout v. Watson, 19 Or. 251, 24 Pac. 230. In that case an insolvent firm had executed a bill of sale of all its property to one Stout, in consideration of money due him, and his assuming and agreeing to pay out of the proceeds certain creditors named the money due to them from the insolvents, and to pay certain other creditors named, pro rata, such amount as then remained. There were still other creditors, who were not provided for. The court held that the bill of sale was a general assignment, and as such was void under the statute. In so deciding the court said:

"The distinctions between an assignment and a sale are too marked to be misunderstood. Sales are transfers in the ordinary course of business. Assignments commonly grow out of the embarrassments or suspension of business."

It is the distinct doctrine of these two decisions that the statute of Oregon rendering invalid a general assignment for creditors unless made for all creditors was not intended to prevent an insolvent debtor from preferring one creditor to another, and was not intended to apply to any and all instruments or means by which an insolvent might divest himself of his property, and thereby pay or secure certain creditors to the exclusion of others, but was intended to apply to the subject-matter of the statute, which was the voluntary distribution of an insolvent's estate through an assignee, and substantially in the method contemplated in the statute,—a proceeding by which the insolvent surrendered his estate to another for the benefit of his creditors, and under which the assignee distributed the estate, and in which the transfer became effective without the assent of the creditors, and the insolvent lost all dominion over his property. The transfers in the case before the court do not come within this definition of a general assignment. They are mortgages in the usual form. In each there is a defeasance and a reservation to the insolvent of dominion over the mortgaged property until default in paying the debt. In view of the construction so given to the law by the supreme court of Oregon, it is immaterial that the ultimate effect of the mortgages may be to distribute the whole of the insolvent's estate among the creditors named in those instruments, to all intents as if an assignment had been made in the manner interdicted by the statute. The controlling fact is that the instruments are mortgages, and not assignments. The case differs in no essential feature from that of Hembree v. Blackburn, unless it be that it presents equitable considerations in favor of the validity of the mortgages that did not exist in that case. It appears from the record before us that, not only were the mortgages made in consideration of an actual bona fide indebtedness, but there was an additional consideration in the fact that certain of the creditors whose claims are thereby secured had, prior to the execution of the mortgages, brought actions against the insolvent, and had attached the property which is the subject-matter of this suit, while others were preparing to pursue the same course; and there is undisputed testimony that one purpose of the mortgage was to avoid the costs of litigation that would have been incurred in the attachment suits, and to substitute mortgage liens for the attachment liens. In this view of the law we differ from the learned judge of the court below, but we find no error in the final decree, which dismissed the plaintiff's bill, and that decree is accordingly affirmed, with costs to the appellees.