[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 444 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 445 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 446 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 447 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 448 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 449 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 450 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 451 
The proof of the execution of the articles of copartnership between H.F. Mabbett and Fountain was insufficient. The certificate of the officer merely stated that the witness acknowledged that she subscribed the same. But there was only a general objection to its being received in evidence against the defendants, without specifying any ground whatever for that objection. Had that been done, perhaps the plaintiff would have produced the necessary proof.
The transfer of the interest of Henry F. Mabbett, in the concern of Mabbett Fountain, to Hannah Mabbett, was sufficiently proved. It was not necessary that the vendee or assignee should be called as a witness for that purpose. It was enough for the plaintiff, that the contract of sale was duly acknowledged by one of the parties to it, and proved by the subscribing witness as to the other; and if the testimony of Hannah Mabbett would have thrown suspicion over the transaction, she could have been called by the defendants. The consideration, too, prima facie, was sufficient. She was to pay the debts, and she gave up the note for $2000, which, from the testimony, it seems, would have been paid to her if she had presented it for that purpose. And nothing was thereby deducted from the assets of Mabbett Fountain, to pay the debts of Mabbett Mulligan; for she took all the interest of Henry F., and became liable to pay his share of those debts. The embarrassments of Mabbett 
Mulligan may have led to this transfer; but nothing appears by which it can be inferred that any of the parties to it intended to defraud the creditors *Page 452 
of Mabbett Fountain; and besides, upon that question the jury found for the plaintiff.
Nor can it be doubted that Hannah Mabbett became a copartner with Fountain from that time; at least, as between the parties. Personally she took no active part; but the transfer of the interest of Henry was complete, and she was immediately recognized by Fountain as a partner, and her power of attorney to Henry was then shown to him; Fountain changed the style of the firm, and put up a sign bearing the new name; the bank account was also transferred accordingly; and all the business thenceforth was done under the name and style of the new copartnership. One partner cannot introduce a new member into the firm without the consent of all the old members, but here was sufficient evidence of such consent. (See Jeffreys v. Smith,
3 Russ., 158.) The words used in the assignment, `one equal undivided half of the goods," c., perhaps, by a critical reading, might be construed to mean the interest of the assignor in a moiety. (Heydon v. Heydon, 1 Salk., 392; Coll. onPartn., by Perk., § 392; Johnson v. Evans, 7 M. G.,
240.) But in a subsequent clause he also transfers to her all his interest and claim to the property of every nature and kind belonging to the firm.
The power of attorney, given on the 25th day of July, 1846, by Hannah Mabbett to Henry F. Mabbett, was sufficient to authorize the latter to do every act necessary to be done by a partner; certainly in the ordinary course of the business. Indeed, the language is so broad, that I am inclined to think if one partner can himself transfer all the partnership effects, and can delegate authority to another to act for him in such cases, this power of attorney did authorize the agent to do so. But in addition to this, and upon the same principle, the power of attorney, also given by her to Henry, dated on the 20th of November, 1846, although some part of it was not very aptly expressed, was abundantly sufficient to authorize the transfer of the goods *Page 453 
of the firm of J.S. Fountain Co. to pay the debt of that firm to the plaintiff. It empowered him "to make, execute and deliver" to the plaintiff "a sufficient amount of goods out of the stock of goods now owned by J.S. Fountain Co., to pay and satisfy the indebtedness" of that firm to him. That debt exceeded the value of all the goods, at the time of the transfer under which the plaintiff now claims.
The objection to so much of the proof of what Hannah Mabbett said, and afterwards wrote, as was finally admitted by the court, was not well taken. Such evidence was admissible so far as it tended to show an authority to Henry to make the transfer to the plaintiff. If she wrote to him to do so, or if she told him to do so, that could be shown as an act, as a part of the evidence of the plaintiff's title. A sale to pay the debt of the company under such an authority would be sufficient, at least, as to her, especially if possession was given; and even if the instrument under seal was not sufficient, this might be; and if the evidence was not given to explain or vary the power under seal, or such additional authority was not given at the same time, but was an independent transaction, and before the sale, the evidence was admissible. The power of attorney under seal did not prevent her from appointing the same person agent with other powers, or from giving other instructions. But nothing that she said or did could affect the rights of the defendants, after they had caused the levy upon the property. So too, proof of the acts of Henry F. Mabbett, as her agent, and of Fountain, before that time, were admissible, so far as they were evidence of a contract, and that plaintiff had taken possession. And for such purposes only, I understand the court to have admitted them.
The principal question in this case is, as to the power of Hannah, by her attorney, to convey or transfer the property in question to the plaintiff. No doubt, if the transaction between Henry and Hannah Mabbett was for the purpose of defrauding the creditors of Mabbett and Fountain, or *Page 454 
the transfer to the plaintiff was for that purpose, or to defraud the creditors of J.S. Fountain and Co., such transfers were void as against the creditors of those firms, respectively, whether with or without the concurrence of Fountain. On those points, the jury have found for the plaintiff. But the judge at the circuit also told the jury that the assent of the partner, Fountain, was not necessary if there was no intention to defraud. In order, therefore, to sustain this judgment, we must hold that where there is a debt due to a bona fide creditor from the firm, one member of it may transfer all the goods and chattels of the firm to such creditor to pay the debt, without the knowledge or consent of the other partner who was present or could have been consulted, there being no intention to defraud the creditors of the firm.
The right and power of one partner to transfer all the effects of the firm for the payment of debts, without the consent of his copartners, has been the subject of conflicting opinions. It is not necessary, in this case, to decide whether he can make an assignment to a trustee for that purpose. (See Havens v.Hussey, 5 Paige, 30; Deming v. Colt, 3 Sandf. R., 284;Hayes v. Heyer, id., 293; Hutchinson v. Smith, 7 Paige,
26; Anderson v. Tompkins, 1 Brock. R., 456; Harrison v.Sterry, 5 Cranch, 289.) But it seems to be pretty well settled, that one member of a firm can convey or pledge all the partnership effects directly to a creditor, in payment, or for the security of a debt due from the company, if there be no fraud. (See Egberts v. Wood, 3 Paige, 517; Harrison v.Sterry, supra; Anderson v. Tompkins, supra; Fox v. Hamburg,Cowp., 445; Piersons v. Hooker, 3 John. R., 68; Robinson
v. Crowder, 4 McCord's R., 519; Mills v. Barber, 4 Day'sR., 428; Tapley v. Butterfield, 1 Metc., 515; 3 Kent,
44; Halsey v. Whitney, 4 Mason, 206; Smith's Merc. Law,
79; Coll. on Part. by Perk., §§ 384, 394, 395; Stor. onPart., § 101; Cary, 25, 29, 30; 1 Parsons on Cont., 154;Watson on Part., 105; Morgan v. Marquis, 9 Exch. R., 145;Gow. *Page 455 A.P.C., 132, 135, a; 4 B. C., 867.) The difficulty is in determining what circumstances will make such transfer fraudulent. Does the fact that one of the partners, not absent but at their place of business, does not know of it and is not consulted, and that the assignment is of all the personal effects of the firm, and that it is to one, or a portion only of the creditors, make it fraudulent? The relation subsisting between partners is of the most intimate and confidential nature. They are joint tenants of the stock and effects of the company; their interests are joint and mutual, and each is seized per my et pertout; each has entire possession, as well of every part as of the whole; and each of two partners has an undivided moiety of the whole, and not the undivided whole of a moiety. A partnership is a voluntary association, by which in all the affairs connected with the business an authority is impliedly given to every member to dispose of the partnership property as if it were his own personal effects. Such is the indivisible nature of their interest, and the capacity of every member to act as the authorized agent of all, that whatever one does in the course of the partnership business has the same efficacy as if all had severally and directly joined in the act.
But it is said the disposition of all the personal effects of the firm to pay one creditor, without the consent of the other member of the firm, when he is present or can be consulted, is not an act in the course of the partnership business, but is a virtual dissolution of the partnership, and fraudulent as to such member. But, as we have seen, one partner, in the absence of fraud on the part of the purchaser, has the complete jusdisponendi of the whole of the partnership interest. The author of a treatise on mercantile law lays down the broad proposition: "Provided the contract have a sufficient relation to the business of the firm; and the contractor have, in other respects, actedbona fide, it matters not much what may be its description, nor how grievous the contracting partner's fraud and misconduct." *Page 456 
(Smith's Merc. Law, 79.) And the cases seem to go to that extent. (See Coll. Part., § 445 et seq.; Carry on Part., 29, 30.) And, certainly, a creditor has a right to seek and obtain from his debtor a preference for or payment of his debt to the exclusion of other creditors; and that without the imputation of fraud upon either party. I do not say that in no case would equity interfere in favor of a firm against a third person, in case of a contract of sale by one member. But this is an action at law between creditors, and the jury have negatived all fraud in fact on the part of the plaintiff; so that it is simply a question as to the power of sale by one member without the consent of the other, of all the partnership effects to pay the partnership debts. If the title to the articles of merchandise in question passed at law, the judgment must be affirmed. This sale may have broken up the firm; but there was no agreement between the members of the firm of J.S. Fountain Co., that it should continue for any definite period. But if there had been, the dissolution (if such was the result) was a mere consequence which did not affect the sale. This jus disponendi of each partner is for the advantage of trade and commerce, and no doubt strengthens the credit and benefits the partners themselves; but, however that may be, it is sufficient for the creditor, who receives the property in payment of his debt, that it exists and has been exercised in his favor without any fraud on his part.
The judgment must be affirmed.
GARDINER, C.J., DEAN, CRIPPEN and MARVIN, Js., concurred in the foregoing opinion. RUGGLES, J., took no part in the decision.