HIGGINS v. CURTIS et al.

(*Supreme Court, General Term, First Department.* February 18, 1892.)

FRAUDULENT CONVEYANCE—KNOWLEDGE OF GRANTEE—EVIDENCE.

　　An insolvent merchant, having a special partner, transferred the stock of goods of the firm, consisting of toys, for the purpose of defrauding creditors. The purchaser did not inquire as to the condition of the firm, or the reason for making the sale; made no effort to consult the special partner; was utterly unacquainted with the toy business; and, though he had a bank-account, made the first payment, $4,000, in bills. The price was much less than the value of the goods, and the invoice was taken on Sunday, with no one present but the purchaser, seller, and appraiser. On the next day a meeting of creditors was called and an offer of compromise made. *Held* sufficient evidence to support a finding that the purchaser participated in the fraud. VAN BRUNT, P. J., dissenting.

Appeal from special term, New York county.

Action by Francis Higgins, as receiver of the firm of T. A. Anglim, against John J. Curtis and said Anglim, to set aside an alleged fraudulent conveyance of a stock of goods. Judgment for plaintiff. Defendant Curtis appeals. Affirmed.

Argued before VAN BRUNT, P. J., and LAWRENCE and O'BRIEN, JJ.

*William H. Blain,* (*Charles H. Woodbury,* of counsel,) for appellant. *Henry McCloskey,* for respondent.

LAWRENCE, J. This is an appeal by the defendant Curtis from a judgment rendered at special term, by which it was decreed that the sale of the assets of the firm of T. A. Anglim, by said defendant, to defendant Curtis, was null and void, as a fraud upon creditors. We think it is evident that the sale and transfer by Anglim to Curtis of the stock, fixtures, good-will, and lease of the premises, No. 23 Murray street, was a fraud upon the creditors of the firm, of which he was the general and Miss Brophy the special partner. On the evidence we are obliged to conclude that Anglim intended a fraud upon his creditors, to which the special partner refused to consent. There also can be no reasonable doubt that Curtis knew that Anglim intended to commit a fraud upon the latter's creditors in making the sale. Curtis had never been in the toy business, and, so far as the evidence discloses, knew nothing about the method or manner in which it was carried on. The transaction is open to suspicion from its beginning to its close. No inquiry seems to have been made by Curtis as to whether the firm was solvent or insolvent, nor as to the reason why Anglim proposed to sell his business and stock. The evidence shows that when Anglim first mentioned the subject to Curtis the latter thought that he was joking. It is not compatible with common sense to argue that one man could propose to another the sale of a large stock of goods, in a business with which the proposed vendee was entirely unacquainted, without having the suspicions of the latter aroused, nor that the proposed purchaser should not make some inquiry, apart from the statements made to him by the proposed vendor, of the reasons which induced the sale. We are of the opinion that Curtis did know that Anglim was insolvent, and that his reason for making the sale to Curtis was to enable him to hinder, delay, and defraud his creditors. Without reiterating the fact already stated as to the ignorance of Curtis of the business, the further facts that the property was appraised on Sunday, when no one but the vendor and proposed vendee and the appraiser were present; that before the bill of sale was signed

Anglim said to Curtis that he had a store in Twentieth street, and Curtis told him that he had better put it in, and that this was done; and that Curtis paid cash, although he had a bank-account,—sufficiently show that the design was that the transaction should be kept secret from the creditors of the firm, and from the special partner, and that the sale was fraudulent as to creditors.

Again, the calling of the creditors' meeting the day after the sale, and the offer which was then made, characterized the whole transaction as one which had been entered into by Anglim, for the purpose of hindering, delaying, and defrauding the creditors of the concern. We think it is also evident that Curtis' knowledge of Anglim's insolvency made him a party to the fraud on the firm's creditors, even although he paid $4,000 in cash, and gave the four notes for $1,500 each upon consummating the transaction. In *Billings* v. *Russell*, 101 N. Y. 226, 4 N. E. Rep. 531, it was held that the fact that a mortgage is given, or it seems that property was transferred, by a debtor for a valuable consideration, is not as a proposition of law inconsistent with the existence of an intent on the part of the debtor to defraud his creditors, or of such knowledge thereof on the part of the mortgagee or purchaser as will avoid the mortgage or conveyance, and that in this regard no distinction can be made between the consideration furnished by an existing debt and that arising in any other manner; also that where there is an actual intent to defraud no form in which a transaction is put can shield the property trans-ferred from the claim of creditors. That case was much stronger than this. There the proof showed that the mortgage executed by an insolvent debtor was given to secure a debt actually owing by the mortgagor, and yet it was held as a matter of law that the execution of the mortgage did not disprove the existence of a fraudulent intent on the part of the debtor. See, particularly, opinion of RUGER, C. J., at pages 231 and 232, 101 N. Y., and pages 533 and 534, 4 N. E. Rep. The transaction which is the subject of consideration in this case cannot be upheld under the cases of *Mabbett* v. *White*, 12 N. Y. 442; *Bedell* v. *Chase*, 34 N. Y. 386; *Van Brunt* v. *Appelgate*, 44 N. Y. 544; and *Graser* v. *Stellwagen*, 25 N. Y. 315, for the reason that in those cases the conveyance and transfer of the firm's property were made to a *bona fide* creditor of the firm in payment of a partnership debt, and no question of fraud was presented.

If it is necessary to add anything more to support the conclusion at which we have arrived in this case, it is sufficient to say that we are of the opinion that the consideration which was paid for the sale of the property in question was far below its actual value, and that fact goes far to convince us that the transaction was intended to be and was fraudulent as to creditors. We are therefore of the opinion that no error was committed in the disposition which was made of this case by the special term, and that the judgment which was rendered below should be affirmed, with costs and disbursements.

O'BRIEN, J., (*concurring*.) The evidence conclusively shows that Anglim's intention in selling was to defraud the creditors. The remaining question is, does the testimony show that Curtis had knowledge of this intention, and did he co-operate in effectuating this fraudulent intent? That he was aware of Anglim's insolvent condition before the receipt of the bill seems to me reasonably free from doubt. This fact, however, would not be conclusive against his title if he had purchased in good faith for a valuable consideration. That he did not so purchase is shown by the evidence which supports the findings to that effect of the learned judge below and the opinion of Mr. Justice LAW-RENCE on this appeal. To my mind the course pursued by Curtis before and immediately after the sale is susceptible of one construction only, viz., that with knowledge of Anglim's condition, and without desiring to become a real purchaser, he was willing to assist Anglim in his scheme to obtain a compromise with creditors, which could have been arranged on more favor-

able terms with a bill of sale outstanding and a third party in possession of the business than with Anglim himself in possession of the property. This, moreover, would have prevented attachments by creditors, which was one of the things feared by Anglim. Having lent himself to a scheme thus devised which would show an intent to hinder, delay, and defraud creditors, he should suffer the legal consequences. I do not mean that Curtis was guilty of any fraud from which he was to profit, but that his friendship for Anglim induced him to enter into an arrangement which should not, as against the plaintiff as receiver for the creditors, be upheld. I therefore concur with Mr. Justice LAWRENCE in affirming the judgment.

VAN BRUNT, P. J., (*dissenting.*) I cannot concur in the conclusion arrived at by Mr. Justice LAWRENCE in the disposition of the appeal in this case. It seems to me that the fact has been lost sight of that no matter what may have been the fraudulent intention of the seller of the goods in question unless the purchaser participated in that fraudulent intent or was aware of its existence his title to the property purchased cannot be impeached, and it is not sufficient to establish facts and circumstances which may tend to establish a guilty knowledge, but which are equally consistent with the innocence of the accused party, because, under such circumstances, the meaning must be ascribed to those facts and circumstances which accords with innocence rather than that which imputes a criminal intention. *Morris* v. *Talcott*, 96 N. Y. 100–107; *Baird* v. *Mayor*, 96 N. Y. 567–592, 595. It is also the rule that the fact of the existence of a fraudulent intent upon the part of the seller simply throws the burden of proof upon the purchaser to show that he is a *bona fide* purchaser for a valuable consideration. *Starin* v. *Kelly*, 88 N. Y. 418. There is no question but that the proof establishes a fraudulent intent on the part of the seller, but it seems to me that there is an utter absence of proof going to show that the purchaser was aware of it, or that he in any way participated in the fraud. It is claimed that there has been shown inadequacy of price as an indication of fraud upon the part of the purchaser; but it is to be observed that, although the learned court found that the goods were worth $15,000, there is no proof to sustain such finding, or that the purchaser was in any way aware that there was such a gross inadequacy in the consideration as would necessarily excite his suspicion of the good faith of the seller.

It is true that the appellant testified that the appraiser who examined the goods appraised the same at $15,000, but it is shown, in connection with the other evidence, that this appraisal was based upon the assumption that the goods should be sold in the ordinary way, and that could not be done until the next season, the expenses of carrying the goods over being quite large. It is true that the appellant had never been in this business before; but this fact did not preclude him from buying a stock of goods which was offered him for sale if he could purchase them in good faith, and at a price upon which he might make some profit. Trade and barter depend upon the prospect of profit, and if a man cannot purchase goods at a lower price than he can hope to sell them for, then trade must stop. That seems to be the theory upon which it is claimed that the appellant paid an adequate consideration for the goods in question. But it is said there is some evidence that these goods were worth $20,000. This depends upon the evidence of Mr. Campbell, who knew nothing whatever upon the subject. He testified that he stated to Curtis that he understood the goods were worth some $20,000, and that the sale was wrong; that it ought not to have been done; that it would be an improper thing to do, as it would be a fraud upon the special partner; and that he understood the sale was to be for $3,000 in cash, and $7,000 in notes, to run 3, 6, 9, and 12 months. And in another place he testified that he told Mr. Curtis that he thought it an improper thing to do; that it was a fraud on the creditors and on Miss Brophy, the special partner. The fact

that the goods were not worth any such sum is established beyond all question, and the alleged statements of Campbell are contradicted by every witness who was present on that occasion. And it is to be observed that the amount of credence to be placed upon Campbell's evidence is very much shattered by the fact that, knowing that the purchase price of these goods, as he understood it, was to be $3,000 cash and $7,000 in notes, he made an affidavit in respect to this matter, in which he stated that the defendant Anglim, the seller, told him that the stock of goods was worth about $20,000, and that he intended to sell them to Curtis for $3,000 in cash. And when questioned in regard to the fact of the notes, and his omission to mention them in that affidavit: "*Question.* Was that intentionally left out? *Answer.* I don't know."

How much credence is to be placed upon the evidence of a witness who endeavors, apparently intentionally, to mislead the court in regard to the consideration that was paid, in so manifest a manner, it is not necessary to discuss. It would be rather unjust to compel a man to lose $4,000 of money which he had put into an enterprise upon evidence of such a character, when such evidence was denied by credible witnesses. It seems to me that it is apparent that the discussions which arose at Campbell's office were as to the right of the general partner to sell this stock without the consent of the special partner. It appears from the evidence that as soon as Mr. Curtis, the purchaser, knew that there was a special partner, he desired to see the special partner, or her counsel, and it was only when he was advised that he could purchase these goods from the general partner, and get a good title thereto, that he perfected the purchase. He went into possession immediately, and the seller went out of possession, and never had anything further to do with the business until more than a year thereafter, when he was employed by Curtis, pursuant to the order of the court entered upon the consent of all the parties. That Curtis may have known of the insolvency of Anglim, the seller, may be true. But, even if he did, it in no way impeached his title. As far as the evidence shows, Curtis may have believed that Anglim was desirous of selling this stock of goods, although insolvent, for the purpose of applying the proceeds thereof in payment of his debts.

Whatever proceedings the seller, Anglim, took in reference to his creditors, cannot affect the title of Curtis if it was acquired in good faith. There is only one point of evidence which to my mind in any way impeaches the good faith of Curtis, and that is his testimony as to the store in Twentieth street, in respect to which he testified that the bill of sale was ready, but before it was signed Anglim says: " 'There is a little store up at Twentieth Street that I have got in which there is a couple of hundred dollars' worth of goods.' I said, 'You had better put it in.'" And they added that to the bill of sale. But it seems to me that this circumstance cannot establish a fraudulent intent upon the part of Curtis in making the purchase. The payment by him of a fair consideration for the merchandise was strong evidence of his good faith, and of the absence of a fraudulent intent on his part. In order to be sufficient to overcome the presumption of honest motives in making the purchase the evidence should certainly be of a satisfactory character, and inconsistent with an innocent purpose. It is claimed upon the part of the appellant that the court erred in refusing to find certain matters of law. In this, we think, there was no error. They were arguments to be used before the court in respect to the weight to be given to evidence, being rules of evidence rather than findings in respect to matters of law. The court is bound to find conclusions of law arising upon facts found, but nothing in the shape of argument. Upon the whole case, therefore, it seems to me that there was too slight evidence of any fraudulent intent upon the part of the appellant Curtis to justify the court in holding the sale to him void. The judgment should be reversed, and a new trial had, with costs to the appellant to abide the event.