O’Brien, J.
This action was brought to recover $56,-706.10, the proceeds of four policies of insurance, and two certificates of membership in the Mercantile Benefit Association. Each of the four policies was issued upon an application signed Bessie Lawrence Gilman, per A. C. Gilman, and she was named in the application as the party for whose benefit the insurance was desired. In each policy the amount of the insurance was made payable upon the death of A. C. Gilman to the appellant. The applications for membership in the Mercantile Benefit Association were signed by A. C. Gilman, and he therein stated that he desired his death loss to be paid to the appellant, his. wife ; and certificates of membership were so issued.
Upon Gilman’s death, the amounts due upon the policies and certificates were collected and deposited in a trust company, where they still remain.
It appears from the findings and opinion of the referee that in December, 1880, A. C. Gilman became a member *290 of the firm of J. H. Labaree & Co., dealers in teas and coffees, in the City of New York, and continued a member of that firm, and the firms that succeeded it under the same name, until his death, which occurred on the 15th of December, 1890.
During all this time,, he had practically the exclusive charge of the office affairs of these several co-partnerships. Their books of account were kept by him, or under his directions, and he had the entire management of their bank accounts. All notes, checks and other paper issued in the business of the co-partnership were made by him, and for several years prior to his death it was his custom to prepare and furnish to his co-partners semi-annual statements which purported to show the assets, liabilities and actual condition of the firm at the dates when the same were rendered. These statements had been accepted by his co-partners without question as true, they having the most unbounded confidence in his integrity . . . During upwards of eight years prior to his death he had plundered his firms of large sums of money, which he had appropriated to his own use . . . His embezzlements amounted to more than $220,000. The moneys so taken, or much the greater portion of them, were deposited by him to his own credit in one or another of several banks with which he had individual accounts, and then drawn out for his own purposes.
The complaint alleged that all the premiums and assessments upon the policies had been wrongfully paid by A. C. Gilman out of moneys wrongfully diverted from his co-partners, and the plaintiff claimed the right to follow these moneys into the policies, impress them with a trust, and take the proceeds as belonging to him. The amount of the plaintiff’s money, which the referee decides was invested in these premiums, was $4,155.29; and having found that this money went to pay the premiums of certain of the four policies of insurance, he held that as to those policies the plaintiff was entitled to judgment, *291 impressing upon them, or the proceeds, a trust in favor of the plaintiff; and as to one of the policies, although by the judgment the proceeds thereof are not awarded, he decided that the amount of premiums paid out of the plaintiff’s money, with interest, should also be recovered by him.
As to the remaining funds, being the proceeds of the other policies, the premiums upon which had not been paid with the plaintiff’s money, he decided, subject to a lien thereon for premiums paid in favor of plaintiff, that the same belonged to the defendant.
The appeal is from so much of the judgment as was in favor of the plaintiff.
It will be seen that the referee adopted the plaintiff’s theory that he was entitled not only to the amount of the premiums, but also to the policies which were the fruits of those premiums upon the ground that equity will follow the proceeds, impress a trust upon them and take them from the defendant. A contrary view of the principles which should control and govern the rights of the parties was expressed upon the motion granting the preliminary injunction in this case. As the judgment is not open to the criticism of being founded upon insufficient evidence, its affirmance or reversal is necessarily dependent upon the view which we are to take of the two direc-tly opposite theories advanced in this case.
Throughout, the referee and the counsel for the plaintiff characterized the moneys appropriated by Gilman as moneys “ stolen or embezzled ” from the firm. We think that a moment’s consideration of the true relation and title of a partner to the funds and property of the co-partnership will demonstrate that the use of such language is inappropriate. We also seriously question (although we are aware of the fact that in writers and text-books, and also in decisions, expressions to that effect can be found) whether the relation of a partner to his co-partners is .strictly that of a trustee. The relation between partners *292 is strictly one of contract. It does not arise by operation of law, but is founded upon an agreement, express or implied," between the parties thereto.
There can be no doubt that from its nature, as was said in the Mfg. Bank v. Cox (2 Hun, 572-5), the principles upon which the relationship of co-partners is founded are strict and exacting, demanding entire good faith towards each other and the highest standard of morality, integrity and fair dealing. And it is no doubt in view of the character of this relationship that we frequently speak of and designate the same as a trust relation ; and this arises from the fact that the functions, rights and duties of partners in a great measure may be regarded as comprehending those both of trustees and agents, and in some cases, where the facts warrant, the general rules of law applicable to such characters have been applied. This, however, is far from saying that the relation itself is strictly one of trust. In this case the importance of the distinction between a quasi trust and a strictly trust relation need not be dwelt upon in view of the conclusion which, upon either ground, we have reached.
Whatever the relation of one partner to another may be, wé do not think that the appropriation of any of the co-partnership property by one partner can be properly characterized as property stolen or embezzled. As was said in Mabbett v. White (12 N. Y. 442), the relation subsisting between partners is of the most intimate and confidential nature. They are joint tenants of the stock and effects of the company, their interests are joint and mutual and each is seized per my et per tout. Each has entire possession as well of every part as of the whole, and each of two partners has an undivided moiety of the whole, and not an undivided whole of a moiety. A partnership is a voluntary association, by which, in all the affairs connected with the business, an authority is impliedly given to every member to dispose of the partnership property as if it were his own personal effects. Such is the *293 indivisible nature of their interest, and the capacity of every member to act as the authorized agent of all, that whatever one does in the course of the partnership business has the same efficacy as if all had severally and directly joined in the act.
As the title of a co-partner in and to all of the partnership property is clear from the principle recognized in this case,we do not think that the fact of appropriating any portion thereof by a partner and using the same for his individual benefit, can be termed a stealing of the same, for the reason that one cannot steal property to which he has title. This view, we think, will be enforced by a consideration of the result of the contrary doctrine as applied to the ordinary affairs of a co-partnership. It is a matter of common occurrence in co-partnership affairs to have one co-partner overdraw his account and take from the funds of the co-partnership an amount in excess of what he is justly entitled to. This is sometimes done with, and sometimes without the knowledge or consent of his co-partners. We do not think it would be seriously claimed, if the amount of such overdraft were some small sum like $10, or §20, or $100 out of the property of a co-partnership with assets of $10,000, $50,000, or $100,000, that a partner thus appropriating the money would not have a title thereto, or that the same could be recovered if paid out from either the wife or the insurance company, if applied in payment of a premium due upon a policy of insurance.
The principle, however, which is the same whether the amount of the overdraft be great or small, is apt to be obscured when it is sought to be applied in a case like the one at bar, where the amount appropriated exceeds $200,-000, and where the contract obligation has been so fraudulently disregarded by one partner as to excite our indignation at the extent of the duplicity and the resultant loss of the other co-partners.
The distinction which we seek to emphasize will be apparent if we consider what rights the plaintiff would *294 have upon the facts here shown to recover the moneys paid to the insurance company, if we assumed that during the life of Gilman, the policies, by reason of the failure to pay the premiums, had lapsed, and the plaintiff had discovered the misappropriation of the firm’s money by Gil-man.
It is true that a recovery against the insurance company could be defeated upon the ground that money was paid which, having no “ ear-marlc,” could not be followed. But, assuming it were property which could have been identified, and which was still in the possession of the insurance company, we think that no recovery could be had as against the insurance company, due entirely to the fact that the title of the property thus delivered was, at the time of its delivery, in Gilman, and therefore could not be recovered back by the plaintiff as against the company, which stood in the position of one receiving the same without notice and for value.
The observance of the distinction between an overdraft and the secret withdrawal beyond his interest therein by one of the partners of the funds of the co-partnership would have saved the referee from falling into one error into which he has fallen in awarding the proceeds of two of the policies, the Northwestern Mutual and the Provident Savings Life Insurance.
The Provident life policy was.issued in 1884, and the premiums paid June 14 and October 20, 1886, were paid by checks of J. H. Labaree & Co., and the amounts thereof were duly charged against A. C. Gilman in his account with the firm. In the Northwestern Mutual policy, the premium which was due in October, 1886, was paid by a firm check, and the amount duly charged to Gilman on the books of the firm. The credits to his account on such books were partly for his share of the profits, and partly for amounts of cash put in by him. These premiums were paid out of the mixed fund partly composed of Gilman’s own money and partly of amounts *295 allowed to him as his share of the profits. It will thus be seen that these checks were drawn against a fund to all of which Gilman had a legal title and to some of which his partners never had any claim whatever. And yet because he defrauded them in other matters, the referee held that they could follow his payments made years before in the ordinary course of business for insurance in favor of his wife.
We do not think that Gilman’s title to these moneys is in any way affected by the rule which holds that as between agent and principal a settlement is only final if the principal is informed of the facts. For while this may be good as between the parties, it should not be extended so as to permit the plaintiff to seek the interposition of a court of equity to set aside such an account, and follow the money after plaintiff had paid it over to Gilman as his own and knew that it was expended in procuring insurance for the wife.
We think the law which determines the exact title that a partner has in and to the funds and property of the co-partnership would raise a serious question as to the right of his co-partners to follow such funds or property in the hands of persons, who, without fraud or knowledge of the misappropriation, had in good faith for value received the funds or property.
It is not, however, necessary for us to go to this extent. But we shall assume upon the very theory taken by the referee that the partnership relation is one of trust . . . that the partnership moneys of which Gilman was placed in charge were in his charge in trust, and that his duties in respect to them were those of a trustee for his co-partners. Assuming upon this theory the right of the surviving partners, upon showing that of the so-called trust moneys diverted, some was expended in the payment of premiums, to recover such sums, the question still remains whether the facts established will *296 entitle the plaintiff to recover any more than the amount of such premiums paid.
The principles that should govern were those stated in the opinion upon the injunction herein, and we do not understand that any different view was taken by the referee. It is . . . settled “ that equity will, in cases of theft or diversion of trust fund, follow the misapplied trust fund or stolen money through any changes of investment or form until the means of ascertainment fail or the rights of bona fide purchasers or incumbrancers intervene (Newton v. Porter, 69 N. Y. 133), but if the stolen money or diverted fund has been mingled with other money, or has been invested with other money, then equity will not give the mingled amount or the whole investment to the plaintiff, but will give him a lien to the extent of the money taken and mingled or invested, with interest.’’
In applying this principle to the facts appearing upon the motion it was intimated that “ the insurable interest which the wife has upon the life of her husband, irrespective of how or by whom the premiums were paid, is her individual and separate property, and as such entitled to be recognized and protected by the laws of this State.” This view was enforced by citations from the case of the Ætna Nat. Bank v. U. S. Life Ins. Co. (24 Fed. Rep. 770), which decision was approved in the supreme court in the Bank of Washington v. Hume (128 U. S. 195), wherein it was said “ that the obvious distinction between the transfer of a policy taken out by a person on his insurable interest in his own life and payable to himself or to his legal representative, and the obtaining of a policy by a person upon the insurable interest of his wife and children, and payable to them, has been repeatedly recognized by the courts.”
These views were not concurred in by the referee, and he distinctly held (which resulted in the conclusion reached by him) that the wife had no insurable interest or any interest, in a policy other than that produced by or result *297 ant from the payment of premiums, and that as these had been paid with moneys belonging to the plaintiff, not only the premiums, but the entire proceeds or principal sum due upon the policy, belonged to the plaintiff.
In examining the reasons given for the opinion of the referee we are unable to concur with him, it seeming to us that by force alone of the statutes of this State, the insurable interest of a wife in the life of her husband is property which belongs to her. Therefore the proceeds of the policy did not spring solely from the premiums paid, but arose also from the right of the wife to insure her husband’s lile, which is property or in the nature of property. The proceeds are not then the sole result of the plaintiff’s money, but of that mingled with something which belonged to the wife; and therefore the plaintiff is not entitled to the whole proceeds but only to a lien for the amount of the premiums and interest.
In determining the question as to whether the insurable interest of a wife is property, regard need only be had to its nature. In important respects this right is sole and exclusive of all other persons, and by statute the wife’s policy has certain substantial features and advantages which add to its value, and are not found in other policies. It cannot be taken by her creditors nor by his, even when he pays the premiums, and it is non-assignable. In other words, the wife’s insurable interest is an exclusive right peculiar to herself to make a contract for the payment of money, which contract is a more advantageous one than can be made by any other person in regard to the same subject matter.
It has never been denied that a franchise (which is nothing more than a special privilege) is property.
As defined by Webster, property is "that which, is peculiar to any person ; that which belongs exclusively to an individual; that to which a person has a legal title, whether in possession or not; thing owned.” As, therefore, the right which a wife has to make a particular con *298 tract of insurance upon the life of her husband is one limited to her, we do not see how, under the definition, it can be regarded as anything other than property.
Apart, however, from these general considerations, as already said, we think that the statute itself enforces the view that the insurable interest of the wife is property.
The referee in his opinion attaches much weight, and it seems to us gave undue importance to the case of Shaler v. Trowbridge (28 N. J. Eq. Rep. 595). It is true that that was a case in some respects similar to this. But the distinction between that case and. the one at bar was pointed out in the opinion delivered at special term upon the motion for an injunction.
It was therein said: “ The distinction between this and the other cases in one respect is to be found in the circumstance that in Shaler v. Trowbridge the policies were originally taken out by the husband -payable to himself, whereas, in the case cited and the one at bar, the policies were payable to the wife. Another distinction is to be found in the fact that the status of a married woman and her rights under the law, relating to property and policies of insurance, are entirely different in the two States of New Jersey and New York.”
Both of these distinctions between the Shaler case and the one at bar we regard as material and important. Unquestionably a difference must arise between a policy taken out by a husband on his own life and assigned to his-wife, and a policy taken out by the wife on the life of the husband, which latter is a contract made between her and the company, and the moneys due thereunder are expressly payable to her alone.
With reference to the other distinction, the status of a married woman and her rights under the laws of New Jersey and New York as they existed at the time of the decision of the Shaler case, are so different and distinct that it is only necessary to refer, with regard to the woman’s rights under the laws of New Jersey, to *299 the cases of Muirhead v. Aldridge, 33 L.J. 203; Skilman v. Skilman, 2 Beas. 403 ; Osborne v. Edwards, 3 Stock. 73 ; Clinton Co. v. Hummel, 10 C. E. Green, 45 ; Parsons v. Parsons, Id. 250, and Quidort v. Pergeaux, 3 C. E. Green, 472. These cases will show that a wife gained no interest in a policy on her husband’s life unless she paid the premiums, and her property mingled with her husband’s was liable to the claims of his creditors; and this is true of money in bond as well as of less tangible rights.
We think, therefore, that the learned referee was in error in holding that the Shaler case went on fixed and. certain principles of equity jurisprudence, which, as he states, must be the same in every civilized jurisdiction ; for the reason that the rule governing the application of such principles will show that they are to be applied according to the legal relations of the parties existing in the forum.
Apart, however, from the importance of these distinctions, if we assume that the principle in Shaler v. Trow-bridge would apply to the facts here established, we cannot but regard the case as directly opposed to the views expressed in Bank of Washington v. Hume (supra), Etna Nat. Bank v. Manhattan Life (supra), Pence v. Makepeace (65 Ind. 345), and Stigler v. Stigler (77 Va. 163), which we think are founded upon the better reasoning and more consonant with justice and the public policy that prevails of protecting the insurable interest of the wife in the life of her husband.
It may be urged that the logical conclusion resulting from our views would negative plaintiff’s right to impress a trust on these funds even to the extent of the premiums paid. The learned counsel for the defendant, affected, no doubt, by the justice of the claim so asserted as to premiums paid with co-partnership money, apparently concedes plaintiff's right to recover the same.
Technically, the proper form of action to obtain such moneys “ ex equo et bono” as against Mrs. Gilman would be for money had and received.
*300 We have, however, all the parties before the court, the action itself is one in equity, and it will avoid circuity of action if the rights of the parties are here determined. This seems to be the attitude assumed by counsel in submitting the questions, regardless of the form of action and without objecting to an adjustment of their rights in this action.
We think that the surviving partners would have a cause of action against' Mrs. Gilman for moneys given to her or applied to her use out of the co-partnership funds. The amounts of such payments are easily ascertainable, and are in fact determined by the referee in his report.
As no point is made in regard to the form of action, and as a recovery for the premiums paid could be had against Mrs. Gilman in a proper action, and as a grave doubt exists upon the question as to whether, to the amount thereof, a lien could not be impressed upon the funds in court, we have concluded to adjudge the rights of the parties in accordance with what we regard to be both equitable and just.
While, therefore, we are of opinion that, to the extent that it can be shown that premiums were paid with moneys of the firm, they should be recovered, with interest, we also think that no recovery of the proceeds of such policies beyond such premiums should be allowed.
This conclusion requires a reversal of the judgment and a new trial, which is accordingly ordered, with costs to appellant to abide event.
Van Brunt, P. J., concurred in result.
Ingraham, J.
There are two grounds upon which plaintiff may seek to sustain this action. One is that the money that was used to pay the premiums upon the policies of insurance from which the fund which plaintiff seeks to recover was realized was stolen or embezzled from the firm of Labaree & Co., so that neither Gilman, who stole *301 it, nor the defendant, Bessie L. Gilman, ever had any title thereto as against this firm, or this plaintiff as surviving partner, of the firm; and the other, that as between Gil-man and his co-partners, Gilman was a trustee for his co-partners as to the firm assets, and upon the misappropriation by Gilman of such assets, the surviving co-partners, as the cestui que trustents, could follow the trust property into the hands of anyone who received it, except a bona fide purchaser for value without notice of the trust.
It is not clear from the complaint upon which of these grounds plaintiff places his cause of action.
The complaint alleges that Gilman robbed the firm of which he was a member, and that the money of which he robbed the firm was used to pay these premiums.
It is also alleged that each of the other partners implicitly trusted Gilman, and intrusted to him the entire management of the bank account, finances and office business of the co-partnership, but there is no special agreement alleged by which Gilman occupied any relation to the firm other than that of a co-partner, who, in the administration of the firm business, had special charge of the firm’s finances.
The counsel for the plaintiff in his brief submitted on this appeal appears to rely upon the existence of the trust relation. He says: /
“ In order to prevent the reversal of the judgment rendered by the referee it is sufficient for the plaintiff and respondent to show: first, that Arthur C. Gilman occupied a fiduciary relation to his co-partners in the firm of J. H. Labaree & Co.; second, that without the knowledge and consent of his co-partners he withdrew from the firm moneys intrusted to him in that capacity; and third, that with this money he paid the premiums on the policies involved in this appeal, i. e., he bought the policies with this money.”
I agree with Mr. Justice O’BRIEN that for the reasons stated by him the plaintiff could not be said to have stolen *302 or embezzled the firm property. He, as a member of the firm, was the owner of the co-partnership property, and the fact that he paid himself, from the assets, a greater amount than under the co-partnership agreement- he was entitled to, be that amount small or large, could not be said to be a robbery from the firm. He would be under the co-partnership agreement liable to repay to the firm or to his co-partners upon an accounting the amount of such excess, but upon no principle can a member of a firm be said to steal or embezzle property of which he is the legal owner.
It is undoubtedly a general principle that where one partner diverts the capital or funds of the co-partnership to carry on another trade or the same trade for his own profit and advantage, or to invest such co-partnership money in any property for his own benefit, he will be compelled in equity to account for all profits made by such investment (Story on Partnership, § 178; Long v. Magestre, 1 Johns. Ch. Rep. 305, where Chancellor Kent held that an action could be maintained by one partner against the administrator of his deceased partner for an accounting of the business which the deceased partner had carried on with another party with the funds of the co-partnership).
Whether the relation that existed between Gilman and his co-partners can be said to be that of a trustee and cestui que trust or not, is immaterial. Whatever the relation is that exists, a co-partner who invests the capital of the co-partnership in any way for his personal advantage or in property taken in his own name upon which he realized a profit, will undoubtedly be held to account in equity, for not only the portion of the co-partnership property so invested, but also for any profits that he may realize therefrom:
In the case of Shaler v. Trowbridge (28 N. J. Equity, 595) a co-partner invested the co-partnership property in a policy of life insurance which was payable to himself or *303 his executors upon his death, and it was held “ that such policy of life insurance, although taken in his own name, was in reality co-partnership property, it having been created entirely by the application of the moneys of the co-partnership, and that a subsequent transfer of the policy without consideration was void as against the co-partnership,” and I concur with the decision in that case.
If, therefore, the proof in this case shows that Gilman invested the co-partnership money in any property or contract or obligation of his own, so that such property or obligation was created or existed solely because of the investment of the co-partnership money or property, plaintiff would be entitled to judgment declaring that such obligation or property that had been so purchased or created by the use of the co-partnership money was in reality co-partnership property in the hands of a co-partner, his representatives ora transferee who was not a bona fide purchaser for value.
The question to be determined is whether or not these policies of insurance come within this rule. There were four, policies of insurance and so far as they affect this question they are substantially the same ; the applications for the policies were made by defendant Bessie L. Gilman, and signed Bessie L. Gilman, by Arthur C. Gilman, who thereby acted as her agent in making such applications, and the contract in the policies was that the insurance company promised to pay to Bessie L. Gilman, the wife of Arthur C. Gilman, the sum mentioned within ninety days after due notice and satisfactory proof of the death of Arthur C. Gilman.
The contract was thus between the insurance company on one part and Bessie L. Gilman on the other, and the sole relation that Arthur C. Gilman had to the contract was that he had acted as agent of the defendant Bessie L. Gilman in making the application for the policies of insurance, and the contingency upon which the money was to be paid was the termination of his life.
*304 “ He, therefore, in procuring the policies to be made and in paying the premiums, in receiving and acting upon notice, and in paying whatever was necessary to perfect and continue the rights of the assured, himself stood in the attitude of an agent acting for and representing the assured ” (see Whitehead v. N. Y. Life Ins. Co., 102 N. Y. 143).
And it was further expressly held in the last case cited that upon the execution and delivery of these policies the wife had a vested interest in the policy which could not be divested by any act of the husband, and she had the right to pay the premiums and so continue the policy in force, and the husband could not, without the consent of the assured, surrender the policy to the company.
This principle has been many times re-asserted in this' State and is now well settled.
The question as to whether or not the wife had an insurable interest in the life of her husband, or just what that insurable interest was, has nothing to do in determining this question. That question related solely to the validity of the contract of insurance. The insurance company has admitted the validity of the contract of insurance by paying to the wife or upon her order the amount due under the policy upon the death of the insured.
What we must assume is that this agreement between the insurance company and Bessie L. Gilman was a valid agreement whereby the insurance company agreed to pay said Bessie L. Gilman the amount named in the policy upon the death of Arthur C. Gilman.
The referee has found, upon evidence which is sufficient to sustain the finding, that Arthur C. Gilman had drawn from the co-partnership sums largely in excess of the amount that he was entitled to draw under the co-partnership agreement, and that he had paid out of such money so withdrawn the premiums upon these policies of insurance. In some instances the payments were made *305 by check of the co-partnership, which were charged up to him as against his interest in the co-partnership, and in other instances by his individual check upon an individual bank account, which individual bank account was largely made good by moneys drawn by him from the co-partnership.
I fail to see how it can make any difference in determining this question as to whether Arthur C. Gilman took such money from the co-partnership with or without the knowledge of the co-partners. The act in either case was the same; it was a withdrawal by him of the capital of the co-partnership and the appropriation thereof to his own use, and, as before stated, if he had invested such proceeds in real estate or other property, a court of equity could compel him or his transferees to account for such property as the property of the co-partnership.
Here, however, there was no such investment. What he did, having appropriated a portion of the co-partnership property to his own use was to pay a debt of his wife, or in other words, present her with so much money which he, acting as her agent, applied to the payment of her obligation, and thereby continued in force the policies of insurance, whereby the insurance company agreed to pay her at a future time a sum of money.
There was here no investment of co-partnership property by the co-partner for his own benefit. The defendant had the right to pay the premiums herself and so continue the policy of insurance, and the fact, that her husband undertook to pay them himself with what he represented was his own money, and where she had no knowledge that it was not his money, cannot be said to be an investment by a co-partner of co-partnership property for his individual benefit.
It may be that the surviving partners would have a cause of action against Bessie L. Gilman to recover the money belonging to the co-partnership that Arthur C. Gilman had given to her or applied to her use. but upon no principle *306 can it be said that when she used money given to her by her husband in payment of her obligation to the insurance company, and which she had no reason to suppose was not her husband’s money, it was an investment of the firm money upon which the surviving partners of the firm can impress a trust so that not only can they recover back the amount so given her, but adopt her act in making the investment as a firm act and hold the property in which money so given to her had been invested as firm property.
In all of these policies of insurance it is Bessie L. Gil-man, as the assured, who paid the premiums, and it is upon lier payment of the premiums in the future that the policies are to remain in force.
It is not the interest of the insured or of the co-partners that is covered by the insurance, but it is the interest of the assured, the defendant, that is so covered. The assured pays the premiums ; to the assured the sum is to be paid, and when her husband gave her the money to pay these premiums that money belonged to and became her property just as much as it belonged to and became the property of the bank in which it had been deposited.
As between the bank and Arthur C. Gilman upon the deposit of any of this money, the money became the property of the bank and the bank became his debtor.
Upon the payment of Gilman’s check to the insurance company that indebtedness was discharged, and the money so paid became the property of the insurance companies, and their obligation to pay defendant the sum' of money was continued in force. It was then the money that was paid by the bank to discharge its obligations to Arthur C. Gilman that was received by the insurance company.
It may be that the surviving partners can recover from the defendant, Bessie L. Gilman, in a proper action, the amount of money that Arthur C. Gilman had paid to her or on her account out of the co-partnership funds, but the *307 investment that she had made of money received by her from her husband, or that he had applied towards paying her obligations, was money given to her by one who had the legal right to it, and which she had a right to apply to her own use, her only liability being the obligation which might be implied to repay the money of the firm in case it should subsequently appear that said money that was given her was money belonging to the co-partnrship. If the bank had invested the money that was deposited with it in real estate in could hardly be claimed that the co-partnership would be entitled to have such real estate declared to be the property of the co-partnership, and I can see no reason why the defendant stands in any different position.
The case of Olmsted v. Keys (85 N. Y. 597), which seems to be relied upon by the plaintiff, is in harmony with these views. It was there held that the policy taken out by Lester for the benefit of his wife became the property of the wife, and that upon her death her interest in such policy, under the law as it then stood, devolved upon her husband by virtue of his survivorship, and that he was entitled to reduce the policy to possession the same as he would any other choses in action belonging to her at the time of her death.
The right of the surviving partners to recover a money judgment against the defendant, Bessie L. Gilman, for any sum of money paid to her or given to her by her husband, which was in fact co-partnership property, cannot be enforced in this action. This action is in equity to impress upon the proceeds of these policies of insurance a trust in favor of the plaintiff, and for the reasons before stated, no such trust exists.
I think, therefore, the plaintiff has failed to show any right to recover, and that the complaint should have been dismissed. For these reasons I think the judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.